(No. 12298.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALBERT JOHNSON, Plaintiff in Error.

*Opinion filed December 18, 1918.*

1. CRIMINAL LAW—*what evidence will support a conviction for murder.* Proof that the defendant, having in his possession a basket of stolen goods from a recently burglarized house, shot a plain-clothes policeman when the latter asked what he had in the basket and started to raise the cover, justifies a conviction for murder whether or not the defendant knew the deceased was an officer.

2. SAME—*when evidence of burglary and larceny is admissible in murder trial.* On the trial of one for shooting a plain-clothes policeman as the latter attempted to raise the cover of a basket the defendant was carrying, which contained clothing, proof that a house in the vicinity had just been burglarized, and that the clothing, as well as some other articles on the defendant's person, were stolen at that time, is admissible, as characterizing the defendant's conduct.

3. SAME—*when alleged newly discovered evidence is not ground for a new trial.* Alleged newly discovered evidence which would merely tend to impeach one of the witnesses for the State in a murder trial, and which is not of a conclusive character, is not ground for a new trial.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. JOHN P. McGOORTY, Judge, presiding.

JEREMIAH SULLIVAN, JAMES H. BURR, and LEO L. WEIL, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, JOHN PRYSTALSKI, and JUSTIN F. MCCARTHY, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error was indicted and convicted in the criminal court of Cook county for the murder of Martin Corcoran, a police officer, in the city of Chicago, and his punishment fixed at death.

It is not denied plaintiff in error shot Corcoran June 6, 1917, inflicting a wound from which he died about two months later. On that day, about two o'clock in the afternoon, the plaintiff in error and another man were passing along Broadway, in the city of Chicago, where that street is crossed by Waveland avenue. They had a suitcase and a basket in their possession. A residence in that neighborhood had been burglarized a few hours previous and clothing and other articles stolen. Corcoran was a plain clothes policeman. He saw the two men and approached them to ascertain what they had in the suitcase and basket. One of the men ran away, and Corcoran inquired of plaintiff in error what he had in the basket and started to raise the cover on it. Very quickly a shot was fired, and immediately the policeman and plaintiff in error were seen running across Waveland avenue, both having guns in their hands and each firing at the other. Plaintiff in error ran into an alley, threw his gun down and got behind a telegraph pole, where he was captured. No one was able to state how many shots were fired. The gun of the plaintiff in error which was picked up by a witness for the State after it had been dropped or thrown into the street, had one loaded shell in it and four empty ones. There was

one discharged cartridge and five loaded ones in Corcoran's revolver after the shooting. Plaintiff in error was shot in the arm and Corcoran in the groin. The two men were very close together when the first shot was fired, which appears to have been about the time Corcoran attempted to lift the cover from the basket, and Mortimer Miller, a witness for the State, testified it was fired by plaintiff in error. Plaintiff in error testified he did not know Corcoran was a policeman; that Corcoran came up to him, shoved him back, drew a revolver and asked if it was clothing in the basket. Plaintiff in error replied it looked like it and turned away, and as he did so Corcoran shot him, and when plaintiff in error turned around Corcoran fired at him again. Plaintiff in error then started running backwards, Corcoran following him. He could not state how many times he fired at Corcoran, but said after he had been hit his arm hurt him so he dropped his gun and ran behind a telegraph post, where he was taken into custody by the witness Hoffman. Corcoran had been carried into the office of a near by garage and laid on the floor. Plaintiff in error was taken into the same place. He spoke to Corcoran, said he was sorry he shot him and hoped he would not die. Frank H. Anger, a witness for the State who was present at the time, testified the plaintiff in error said: "I am sorry, officer; I hope you won't die." The suitcase and basket plaintiff in error had when approached by Corcoran, and the clothing in them, were identified by the owners of the house in the neighborhood that had been burglarized, as their property. Plaintiff in error had in his pockets a vanity case and a cigarette case, which the owners of the burglarized house recognized as their property and which were taken from the house at the same time the basket and suitcase and the clothing in them were taken. While in the garage office, before the patrol wagon arrived, plaintiff in error asked and was given permission to go into a toilet and escaped through a window. He

was soon caught and brought back to the garage, where he remained until the police came for him in a patrol wagon. Plaintiff in error testified the reason he attempted to escape was that an uproar was raised because he shot an officer and someone suggested hanging him.

It is contended malice, the essential element of murder, was not proved and that the conviction for that crime was not supported by the testimony. In support of that contention it is insisted that Corcoran was not dressed in a policeman's uniform but wore citizen's clothes; that the plaintiff in error did not know he was a policeman; that Corcoran assaulted and fired at plaintiff in error and started to close up on him, when he retreated, drew his gun and returned the fire. Under these circumstances it is argued if plaintiff in error is guilty of any criminal offense he could not have been guilty of a greater crime than manslaughter.

The evidence clearly shows plaintiff in error was in possession of property which had been a few hours before stolen from a residence that had been burglarized in the absence of the family. In addition to the identification of the basket, suitcase and clothing in them by the owners of the residence, plaintiff in error had in his pockets at the time he was arrested a vanity case and a cigarette case taken from the same residence at the same time the other property was taken. When plaintiff in error was taken to the garage office he was seated on a bench by himself. A chisel was found there, after plaintiff in error had been seated on the bench, which did not belong to the garage but which fitted the marks made by a chisel in the facing of the door of the residence which had been burglarized. Miller, a witness for the State, testified plaintiff in error fired the first shot, then ran backwards about ten feet and fired again, then ran five or six feet and fired the third time, after which Corcoran fired and the plaintiff in error dropped his gun and ran behind a telegraph pole. Witness testified he was standing at the entrance to the alley,

near Corcoran. Hoffman testified he could only state that
Corcoran fired one shot, and that was fired while the par-
ties were pretty close to each other. The proof for the
State warrants the conclusion, if believed, that when Cor-
coran accosted plaintiff in error and inquired what he had
in the basket plaintiff in error drew his gun and fired at
Corcoran. Whether plaintiff in error knew Corcoran was
an officer or not, the proof for the State was sufficient, if
the jury gave it credence, to show that the shooting was
begun by plaintiff in error and was without any justifica-
tion. The evidence for the State tends to show plaintiff in
error knew Corcoran was an officer, but whether he did
or not, there was no justification whatever for plaintiff in
error opening fire on Corcoran, if he did begin the shoot-
ing, as testified by a witness on the part of the State.

*People* v. *Bissett,* 246 Ill. 516, is relied upon by plain-
tiff in error. In that case the deceased was a policeman
in plain clothes. He and defendant met in a saloon in a
friendly manner. While they were at the bar the deceased
caught defendant and said he wanted what defendant had
in his pocket. He had no warrant for defendant and there
was no evidence that defendant had committed any crime,
unless he was carrying a concealed weapon, and no evi-
dence he knew deceased was an officer. While the two
men were engaged in a struggle with each other shots were
fired, as a result of which the policeman was killed. This
court reversed a conviction for murder and held defend-
ant could not have been guilty of any graver crime than
manslaughter under the facts and circumstances disclosed
by the evidence. In *Rafferty* v. *People,* 69 Ill. 111, also
relied on by counsel, this court reversed a conviction for
murder. The court said: "The record contains evidence
tending to show that the homicide was committed by the
prisoner in resisting the deceased, who was a policeman
of the city of Chicago, whilst engaged, in connection with
another policeman whom he was aiding, in the act of com-

mitting an illegal and wholly unjustifiable invasion of plaintiff's liberty by attempting to seize his person and take him off to prison without any authority in law so to do. * * * There is not the slightest pretense in the case that the prisoner had been accused or suspected of having committed any felony. or that he at the time was in the act of committing a misdemeanor or even any violation of a city ordinance." Here the evidence shows plaintiff in error was in possession of property which had been recently stolen from a residence that had been forcibly broken into. The proof on the part of the State warranted the conclusion that Corcoran, a police officer, approached plaintiff in error to ascertain what he had in the basket and suitcase, and that when he did so, plaintiff in error, while he was in no danger whatever, real or apparent, except liability for arrest for having in his possession stolen property, drew his gun and fired at the officer. The evidence that after the shooting all the shells in Corcoran's gun but one were loaded and all the shells in the gun of plaintiff in error but one had been fired, tended strongly to corroborate the State's evidence that Corcoran never fired but once and that all the other shots were fired by the plaintiff in error. If the State's evidence was believed by the jury,—and no reason appears from the record why it should not have been,— the conclusion was warranted that plaintiff in error either knew or suspected the official character of Corcoran and shot him in an attempt to escape arrest for having in his possession property stolen from the burglarized residence.

There was no error in the admission of the testimony as to the burglary of the house and the larceny of property therefrom. It was competent for the purpose of characterizing the conduct of plaintiff in error and to prove motive.

Complaint is made that the conduct of the State's attorney in interrogating witnesses and in his argument to the jury was improper and prejudicial. It may be true that in some respects the conduct of the State's attorney

was not in strict conformity with high ethical standards, but there was nothing of a prejudicial character that would justify an inference that the plaintiff in error was injured thereby.

Complaint is made of the giving and refusing of instructions by the court, but there is no valid basis for the objections made.

Neither do we think there was any error committed in refusing to grant a new trial on the ground of newly discovered evidence. The alleged newly discovered evidence only tended to impeach one of the witnesses for the State and would not have been of a conclusive character. *Crozier* v. *Cooper,* 14 Ill. 139; *Woodside* v. *Morgan,* 92 id. 273; *Spahn* v. *People,* 137 id. 538.

The judgment of the criminal court is affirmed, and the clerk of this court is directed to enter an order fixing the period between nine o'clock in the forenoon and four o'clock in the afternoon of the seventh day of February, 1919, as the time when the original sentence of death entered in the criminal court shall be executed. A certified copy of such order shall be furnished by the clerk of this court to the sheriff of Cook county.

*Judgment affirmed.*

---

(No. 12277.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MARION I. MULVANEY, Plaintiff in Error.

*Opinion filed December 18, 1918.*

1. CRIMINAL LAW—*what admissible as part of res gestæ.* On a trial for receiving stolen property, where the defendant's brother testifies that the automobile in question was left at his father's farm by two men on the night it is claimed it was stolen, the statements of such men that their lights had "gone bad" and they could go no further but would call for the automobile later are admissible as part of the *res gestæ* of the transaction.