(No. 15510.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. LYLE WATKINS, Plaintiff in Error.

*Opinion filed October 20, 1923.*

1. CRIMINAL LAW—*when killing of police officer is murder and not manslaughter.* Where men accosted by police officers, in the discharge of their duty, for violation of law begin shooting at the officers without justification, the killing of one of the officers under such circumstances constitutes murder and not manslaughter.

2. SAME—*when evidence is admissible though it tends to show another offense.* On a trial for murder for killing a police officer, evidence that there had been a recent bank robbery in the vicinity, that two of the defendants participated in the robbery and that the police officers in the county were searching for the robbers, is admissible as tending to show a motive for the killing.

3. SAME—*relevant evidence is admissible though it may disclose another offense.* In a criminal case the guilt of the defendant cannot be established by showing that he has committed other offenses, but relevant evidence tending to prove a fact material to the issue is admissible notwithstanding it may disclose another indictable offense.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

BASS & BASS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, J. P. STREUBER, State's Attorney, FLOYD E. BRITTON, and W. M. P. SMITH, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Lyle Watkins, and his co-defendants, John Bauer and George O'Malley, were convicted of the crime of murder, in the circuit court of Madison county. Bauer and O'Malley were each sentenced to life imprisonment in the penitentiary and Watkins was sentenced to

twenty years' imprisonment. Watkins alone brings the record to this court for review.

Omitting the details, the evidence shows that the three defendants were residents of St. Louis; that July 21, 1922, Bauer and O'Malley employed Watkins to take them in an automobile to Venice and Granite City; that Watkins hired a Marmon seven-passenger touring car from one Rohlfing, of St. Louis; that they drove from St. Louis to Venice, arriving there about 8:00 P. M.; that they drove about Venice and vicinity, stopping at various roadhouses and drinking establishments, until near midnight; that they stopped in front of the Newman Hotel, in Granite City, shortly before 12:00 o'clock; that Bauer left the car and went into the hotel and up to the second floor to the room of Bernice Traynor, whose husband was in the county jail at Edwardsville; that Bauer and Traynor were friends and Bauer was trying to arrange bail for Traynor's release; that O'Malley parked the car against the traffic at the "C" street entrance of the hotel and went to Mrs. Traynor's room about five minutes after 12:00 o'clock; that two police officers and two of the sheriff's deputies who met at that corner examined the automobile; that a bank at Madison had been robbed about ten days before the date in question; that Watkins and O'Malley participated in this robbery and the officers had descriptions of them; that the officers took the license number of the automobile, 260-403, Missouri, 1922, and one of them went into the hotel to call the St. Louis police department to ascertain the owner of the car; that Bauer and O'Malley came down-stairs about 12:10 A. M.; that Bauer took from his pocket a pair of goggles and put them on; that O'Malley walked out of the hotel, Bauer following him; that when O'Malley reached the automobile one of the officers stopped him and asked him why he parked his car on the wrong side of the street; that Bauer approached and said, "You will try to arrest us, you big son-of-a-bitch!" and began shooting; that some of the of-

ficers returned the fire; that during the time the shooting was in progress Mrs. Traynor and Watkins ran down-stairs and out of the hotel; that Mrs. Traynor returned immediately and went back to her room; that the shooting continued until twenty-five or thirty shots had been fired; that deputy sheriff Patrick J. Nalty was killed by a bullet from the gun of one of the defendants; that Bauer was wounded in the left leg; that the car was driven away from the scene; that one of the officers forced his way into Mrs. Traynor's room and found her replacing a screen in a window overlooking the point at which the car was parked; that the St. Louis officers arrested Watkins and O'Malley about 1:30 A. M.; that Watkins was at the time driving the Marmon touring car; that the license plates on the Marmon were plates that had been issued for a Hudson automobile; that Bauer was found shortly afterwards in a room where he had been placed after his wounds were dressed; that all the defendants denied having been to Illinois and denied any knowledge of the shooting of deceased; that at different times they told different stories of their activities during the night in question, and on the trial they told a story entirely different from any story they had told on other occasions.

Watkins testified that Bauer and O'Malley took the car at 11:00 o'clock P. M. and left him at Fehr's saloon, in Venice; that he remained there until about 12:25 A. M., when O'Malley came to the door and shouted, "Come on, Lyle! Bauer has been shot!" that he got into the car and drove to St. Louis, where they had Bauer's wounds treated and where they were later arrested. Five patrons of the saloon corroborated this alibi. No person testified that he saw Watkins leave the automobile and go into the hotel at Granite City, but the night clerk of the hotel positively identified him as the man who came down-stairs and rushed out of the hotel to the automobile while the shooting was in progress. All the surrounding circumstances indicate

that Watkins was present, and that he aided, abetted and encouraged Bauer and O'Malley in the murder of the officer. It is unreasonable that Bauer and O'Malley would have stopped in Venice in their flight from Granite City to St. Louis. When the car was found, less than an hour after the killing of the officer, Watkins was driving it. The jury had before them all the witnesses who testified both as to the identity and as to the alibi of plaintiff in error. It was a question of credibility, which is a question peculiarly within the province of the jury. (*People* v. *Gormach,* 302 Ill. 332; *People* v. *Cunningham,* 300 id. 376; *People* v. *Stephens,* 297 id. 91.) It is apparent that the jury gave credit to the testimony of the witnesses for the State and that they did not believe the testimony of the winesses for the defense. The evidence offered to establish an alibi does not raise a reasonable doubt in our minds of the guilt of the plaintiff in error, and the jury evidently entertained the same view. The verdict is sustained by the evidence.

It is contended that the killing was manslaughter and not murder, and that the judgment cannot stand for that reason. This contention is without any foundation in the record. Defendants were accosted by officers, in the discharge of their duty, for a violation of law, and they began shooting at the officers without the slightest justification. A killing under such circumstances is clearly murder. *People* v. *Stephens, supra; People* v. *Johnson,* 286 Ill. 108.

Ten days before the killing of Nalty occurred two men entered the Tri-City Bank, at Madison, during the noon hour and robbed those in charge of more than $13,000 of the bank's money. Witnesses were permitted to testify on the murder trial that O'Malley was one of the two men who entered the bank and that Watkins was the driver of the automobile that waited in front of the bank until the robbers came out. The officers of Madison county, and of Granite City, Madison and Venice, had the descriptions of the robbers and had searched the roadhouses and other

places in the county for them. It is contended that it was error to receive this evidence because it tended to prove an indictable offense other than the one charged in the indictment. That evidence offered proves or tends to prove an offense other than the one with which the defendant is charged is never a valid objection to its admissibility. (*People* v. *Spaulding, ante,* p. 292.) When such evidence is offered, the same considerations with respect to its admissibility arise as upon the offer of any other evidence. The question is, Is the evidence relevant? Does it tend to prove any fact material to the issue involved? (*People* v. *Jennings,* 252 Ill. 534; *Farris* v. *People,* 129 id. 521.) Evidence of other offenses wholly disconnected with the offense charged is not admissible, for the reason that it does not tend to establish the fact in controversy. Guilt cannot be shown by showing that the defendant has committed other offenses, but when relevant evidence is offered it is admissible notwithstanding it may disclose another indictable offense. (*People* v. *Cione,* 293 Ill. 321.) Where the motive for the crime charged is the concealment of some other crime, either by destroying the evidence of such other crime or by killing a witness who could testify relative to it or by bribing or killing an officer who is attempting to arrest the offender, the evidence of such motive is admissible even if it does show the commission of an extraneous crime. (*People* v. *Spaulding, supra; Moore* v. *United States,* 150 U. S. 57, 14 Sup. Ct. 26; *People* v. *Harris,* 136 N. Y. 423, 33 N. E. 65; *Dunn* v. *State,* 2 Ark. 229; Annotations, 62 L. R. A. 212, 105 A. S. R. 990, 7 Ann. Cas. 67.) When a suspected person attempts to escape or evade a threatened prosecution it may be argued that he does so from a consciousness of guilt, and so it is admissible for the prosecution to show that the prisoner killed an officer in attempting to escape. (*People* v. *Johnson, supra;* 2 Wharton on Crim. Evidence,—10th ed.—1495.) Where a deliberate criminal act is established by the evidence the People are not re-

quired to prove a motive for the act, (*People* v. *Corder,* 306 Ill. 264,) but the presence of a motive which would lead the accused to commit the act charged is important in the consideration of the question of whether he committed it, and it is always proper for the People to prove motive when it can be done. *People* v. *Zammuto,* 280 Ill. 225.

Complaint is made of the court's action in giving and refusing instructions, but our examination of the record shows that the complaint is without merit. The instructions refused either did not state the law or they had no bearing on the defense set up by plaintiff in error. The given instructions of which complaint is made have been repeatedly approved by this court.

The record is free from substantial error and the judgment is affirmed.

*Judgment affirmed.*

---

(No. 15491.—Reversed in part and remanded.)
FANNIE DeHAAN, Appellant, *vs.* NELLIE DeHAAN *et al.* Appellees.

*Opinion filed October 20, 1923.*