## The People of the State of Illinois, Defendant in Error, v. Harry Clark and Irwin Hatridge, Plaintiffs in Error.*

1. BANKING—*showing of value of assets after insolvency.* Testimony of a bank receiver and others as to what had been and would be received for certain bank assets was competent on a prosecution of bank officers for receiving a deposit for an insolvent bank, although the figures were ascertained later than the date of the deposit.

2. BANKING—*discrepancy on bank books as evidence of later insolvency.* On a prosecution of bank officers for receiving a deposit when the bank was insolvent, a listing of time certificates forwarded to the State treasurer as cash, although no cash had been received

---

* Received from clerk of Appellate Court, August 8, 1927.

therefor, may be received on the question of insolvency although prior to the date thereof, in view of the length of time they had been in existence.

3. BANKING—*cashier's attempt to restore savings balance as showing knowledge of insolvency.* On prosecution of bank officers for receiving a deposit while the bank was insolvent, evidence that the cashier, after ceasing active connection with the bank, deposited a worthless check for a large amount to restore a shortage in a savings account is admissible to show his knowledge of the insolvent condition of the bank.

4. CRIMINAL PROCEDURE—*evidence of guilt of another offense.* On prosecution of a bank cashier for receiving a deposit while the bank was insolvent, evidence of his deposit of a worthless check to restore a shortage in a savings account is not inadmissible to show his knowledge of the insolvency merely because it tends to show him guilty of another offense.

5. CRIMINAL PROCEDURE—*effect on verdict fixing sentence without authority.* Part of a verdict in which a jury without legal authority attempts to fix the sentence of bank officers accused of receiving a deposit while their bank was insolvent may be treated as surplusage.

6. CRIMINAL PROCEDURE—*remedy for trial court's entering improper judgment.* If a trial court does not enter a proper judgment in sentencing a defendant it may be directed to do so on appeal.

7. CRIMINAL PROCEDURE—*when judgment not reversed for improper verdict.* A proper judgment entered in a criminal prosecution will not be reversed because of an informality in the verdict fixing the punishment.

8. BANKING—*right of defendants to separate instructions.* On prosecution of bank officials for receiving a deposit while the bank was insolvent, the fact that the People had instructions given against the defendants separately did not make it error to refuse separate instructions in favor of each defendant in view of the general instructions in their favor covering those offered.

9. BANKING—*what loss of deposit necessary to offense of receiving while insolvent.* On prosecution of bank officers for receiving a deposit while the bank was insolvent, it is not necessary to conviction of the offense that the deposit should have been wholly lost.

10. BANKING—*evidence first presented on review.* An affidavit, in support of a motion to reverse a judgment without remanding the cause wherein bank officials were convicted of receiving a deposit while the bank was insolvent, that the depositor was indebted to the bank at the time the deposit was made, cannot be considered when presented for the first time directly to the reviewing court, although the affidavit also shows that the failure to produce such evidence at the trial was not due to lack of diligence.

Error by defendants to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the October term, 1924. Affirmed. Opinion filed March 31, 1925.

J. J. BULLINGTON and H. J. BANDY, for plaintiffs in error.

J. P. STREUBER, for defendant in error.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Plaintiffs in error, Harry Clark and Irwin Hatridge, together with Stowell Beach, were indicted in the circuit court of Madison county, Illinois, for violation of section 61 of the Criminal Code, which is section 1 of "An Act for the protection of bank depositors." Cahill's St. ch. 38, ¶ 38.

The indictment charged that on the 31st day of October, 1922, plaintiffs in error were president and cashier, respectively, of the First State & Savings Bank of Woodriver, Illinois, and that Stowell Beach was chairman of the board of directors; that said bank was then insolvent within the knowledge of said officers; that on said date they accepted a deposit of $294 from one George Smith, who was not indebted to the bank, and that the said deposit was thereby lost to the said George Smith. On trial Stowell Beach was found not guilty and plaintiffs in error were found guilty and the punishment of each fixed by the verdict at imprisonment in the penitentiary for two years. This writ of error was sued out to review the judgment entered on that verdict. It appears that the bank was closed on the 17th day of November, A. D. 1922, at the direction of the auditor of public accounts. On October 24, 1922, the bank was examined by an examiner from the State auditor's office, on which date the books of the bank showed its assets to be $974,194.36 and its liabilities to be the same. On that day the examiner ascer-

People v. Clark, 245 Ill. App. 316.

tained the actual cash reserve and money due from banks amounted to $30,180.06 and that the total deposits were $650,210.23. Finding the cash reserve and money due from banks much lower than that required by law and the regulations of the auditor's office, he advised the officers that the same should in some manner be increased. Meetings of the officers of the bank, certain bank examiners and officials of several banks in the city of Alton were held within a few days in Alton. As a result of those meetings it was decided that the directors of the bank in question should deposit in the bank $50,000; that notes to that amount owned by the bank should be assigned to them, and that the sum of $50,000 in addition should be borrowed upon a mortgage by the bank upon its building. Pursuant to this arrangement the directors deposited $51,000 in the bank by November 6, and the $50,000 was borrowed. Of the amount deposited by the directors, plaintiff in error Clark paid $15,000 on the 1st day of November. On the same day he resigned as president and plaintiff in error Hatridge resigned as cashier. Other directors were then selected as president and cashier and a Mr. Slivka, who had previously been an employee of the bank, was placed in charge of it with instructions to report directly to the State auditor's office. The bank continued to conduct its regular business in this manner until the 17th day of November, 1922, when the depositors began to withdraw their money and the bank was closed by the State auditor's office and placed in the hands of a receiver.

It is argued at considerable length by attorneys for plaintiffs in error that the verdict is not supported by the evidence for the reason, as it is claimed, the competent proof in the case does not show that the bank was insolvent on October 31, the day the deposit in question was made. The evidence on this question is voluminous, but we have examined it in detail, to ascertain whether the jury were justified in finding the bank

insolvent at that date. The banking house and fixtures at the time the examination was made by the examiner were carried on the books of the bank at more than $120,000. The testimony of the receiver shows that only $52,150 was realized from the sale thereof, although it appears that prior to such sale he was made an offer of $75,000. The testimony of the receiver and his attorneys and assistants further shows that he had failed or would fail to receive the face value of the notes carried by the bank by at least $50,000 and that $40,000 more of the notes were doubtful. It is true that these amounts and figures were arrived at by the receiver and those testifying, at a time considerably later than the date on which the deposit was received, and it is also true that the question to be determined was whether the bank was insolvent on the 31st day of October, 1922, and not at a later date. However, this testimony of the receiver and others as to what was received and would be received for the property and notes in process of liquidation of the bank was competent in connection with all other evidence in the record for the consideration of the jury in its determination of the value of the bank's assets. (*People v. Hartenbower*, 283 Ill. 591; *People v. Munday*, 280 Ill. 32; *People v. Dubia*, 289 Ill. 276.) This evidence, in connection with the other proofs in the record, which we do not deem it expedient to discuss in detail, justified the jury in finding that the bank was insolvent on the 31st day of October, 1922. In September, 1922, the State auditor's office called upon this bank for a verified report showing the condition of the bank at the close of business September 15. This was the report commonly called for by the State auditor's office prior to an intended examination of a bank and is referred to as a "call report." This report, which was admitted in evidence, was made and sworn to by plaintiff in error Clark. The bank examiner, over the objection of plaintiffs in error, was

permitted to testify to the fact that this report showed that the cash reserve of the bank was $30,000 more than shown by the books. The witness testified that this was due to the fact that three time certificates of $10,000 each had been issued on July 28, 1922, and sent to the State treasurer, but that no money had been remitted by the State treasurer for such certificates, and that the amount represented by these certificates was included in the report as a cash item of the bank and the certificates carried as a liability. It is contended by attorneys for plaintiffs in error that the admission of this "call report" in evidence and the testimony concerning the same was improper and tended to unduly prejudice the jury against plaintiff in error Clark. Attorney for defendant in error, on the other hand, contends that this evidence was competent for the purpose of proving knowledge on the part of plaintiffs in error that the bank was insolvent. There is no evidence in the record whatsoever as to why these time certificates were issued nor as to why the money represented thereby had not been forwarded to the bank by the State treasurer. It is a close question whether this discrepancy between the "call report" and the books tended in any way to prove the insolvency of the bank a month and a half thereafter or any knowledge of such insolvency upon the part of plaintiffs in error, but in view of the length of time these certificates had been in existence and the fact that the bank in the call report claimed to have an equal amount as "cash due from bank" based thereon, we are of the opinion such evidence was admissible. However, we are of the opinion that there is ample evidence in the report outside of that under consideration to justify the jury in believing beyond a reasonable doubt that the bank was insolvent on October 31, 1922, and that plaintiffs in error knew of such insolvency.

It further appeared that upon the closing of the bank the bank examiner discovered a shortage of over $11,000 in the savings account. Over the objections of plaintiffs in error an assistant cashier was permitted to testify that on November 6, plaintiff in error Hatridge, who at that time was no longer actively connected with the bank, presented a check for $10,000 signed by himself on the Alton Banking & Trust Company, payable to the First State & Savings Bank of Woodriver and requested such assistant cashier to credit it to the savings account, but that payment on such check was refused for the reason that Hatridge did not at any time have any money deposited in the Alton Banking & Trust Company. That there was a shortage in the savings account and that this plaintiff in error sought to restore the same or the greater part thereof we think was competent proof to show knowledge of the condition of the bank upon his part and it was not reversible error to permit this testimony. The fact that such testimony might have tended to show him guilty of another offense is not a valid objection to its admissibility if it were relevant to any of the issues being tried. (*People v. Watkins*, 309 Ill. 318.)

The form of verdict as given the jury by the court included the fixing of the sentence by the jury in case any of the defendants were found guilty. The verdict returned by the jury fixed the penalty for each of the plaintiffs in error at a fine of $142.88 and imprisonment in the penitentiary for two years. The court, however, disregarded this part of the verdict, but did fix the same fine as found by the jury, and sentenced plaintiffs in error to the penitentiary "there to remain until discharged according to law." It is argued by plaintiffs in error that this constitutes reversible error for the reason that under the law the duration of a sentence to imprisonment in the penitentiary should not have been fixed but left indeterminate, and that as

a matter of law an indeterminate sentence is for the maximum term.  It is further contended that had the jury been advised that the effect of fixing imprisonment as a part of the punishment was equivalent to sentencing plaintiffs in error for the maximum term, it is very probable imprisonment would not have been fixed as a part of the punishment.  If the jury had no right to fix the term of the imprisonment then that part of the verdict may properly be considered as surplusage, and if the trial court had not entered a proper judgment it might be directed to do so.  (*Armstrong v. People,* 37 Ill. 459; *Henderson v. People,* 165 Ill. 607; *People v. Boer,* 262 Ill. 152.)  The proper judgment however having been entered, it should not now be reversed because of such informality in the verdict.

In behalf of the People the court gave separate instructions, naming each of the defendants, to the effect that it was not necessary that the named defendant personally received the deposit or knew the bank was insolvent nor was it necessary for proof to be made of any specific intent on the part of the defendant named, while the court refused to give certain instructions in behalf of plaintiff in error Clark, specifically mentioning him.  One of these instructions, the refusal of which is complained of, was to the effect that if the jury believed plaintiff in error Clark made a deposit in the bank on October 31, 1922, that this was a circumstance to be considered in determining whether said plaintiff in error on that day knew the bank was insolvent.  In view of the fact that the court in behalf of plaintiffs in error gave general instructions to the effect that if the jury believed from the evidence that the defendants or any one or more of them had made such deposits the same should be taken into consideration in determining the knowledge of the defendants of the insolvency of the bank, we do not consider it was reversible error to refuse this instruction specifically naming plaintiff in error Clark.  It is true

also of the other refused instructions offered specifically naming plaintiff in error Clark, that the same principles of law were covered by instructions given referring to all of the defendants or any one or more of them. We are therefore of the opinion that it was not reversible error to refuse the instructions complained of referring to plaintiff in error Clark, and the fact that instructions referring to the defendants separately were given in behalf of the People is no ground for holding that the refusing of instructions referring to plaintiff in error Clark was error.

Complaint is also made of the court's refusal to give an instruction to the effect that one of the material averments in the indictment was that the deposit made by Smith was lost to him and that unless the jury believed from the evidence beyond a reasonable doubt that "said deposit is lost to said Smith, then you should find the defendants not guilty." This instruction might well have been considered by the jury as charging that unless the jury believed that all of the deposit had at that time been lost to Smith the defendants should have been found not guilty, which is not the law, as laid down by the Supreme Court in the case of *Meadowcroft v. People,* 163 Ill. 56, where it was held that the crime was complete even though the entire deposit is not lost to the depositor.

We find in the record an affidavit of the witness Slivka, who had charge of the bank from the 1st day of November until it was closed, and who assisted the receiver in the liquidation, filed in this court in support of a motion by defendants in error to reverse the judgment herein without remanding the cause. This affidavit stated that on October 31, 1922, the depositor George Smith was a joint signer with four other persons on a note to this bank in the sum of $800; that the note was dated May 23, 1922, and was not paid until November 29, 1922. It further disclosed that from the time of the indictment in February, 1923, to the trial

LaForest v. Chicago & E. I. Ry. Co., 245 Ill. App. 325.

in the following October, this note was not among the files of the bank for the reason that it had been paid and had been transferred to the "dead records" of the bank and was filed under index of "B" because the first name appearing on the note was George W. Buck. This affidavit shows the materiality of this evidence for the reason that it states the depositor was indebted to the bank at the time the deposit was made. The affidavit also shows that the failure to produce this evidence at the trial was not due to the lack of any diligence on the part of plaintiffs in error. Had this affidavit been presented in support of the motion for a new trial the court below would no doubt have given it serious consideration, but being presented for the first time directly in this court it is not part of the record we are called upon to review and cannot be considered by us. The said motion to reverse the judgment which was taken for consideration with the case will be denied. No reversible error appearing in this record, the judgment should be and is affirmed.

*Affirmed.*