(No. 22195.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN SCHECK, Plaintiff in Error.

*Opinion filed February 23, 1934—Rehearing denied April 10, 1934.*

BENJAMIN C. BACHRACH, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-
NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WIL-
SON, J. ALBERT WOLL, and HENRY E. SEYFARTH, of coun-
sel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

The plaintiff in error, John Scheck, (hereinafter re-
ferred to as the defendant,) was indicted, tried and con-
victed of murder in the criminal court of Cook county,
and, upon a verdict of the jury, judgment and sentence of
death were pronounced. By leave of court this writ of
error has issued to review that judgment.

On the 24th of July, 1933, there were three indictments
pending and undisposed of in the criminal court of Cook
county, namely, No. 69193, charging this defendant with
robbery while armed, No. 69194, charging him and Carl
Grundhoefer with murder, and indictment No. 69391,
charging him with robbery while armed. All of said in-
dictments on that date were on the calendar and call of
Judge Molthrop. On that call, and for the purpose of
having dates set for his trials, the defendant was in the

"bull-pen," or prisoner's cage, adjoining Judge Molthrop's court room, with several other prisoners, including Grundhoefer, who was jointly indicted with Scheck in the murder case above mentioned. On the morning in question Sheck had received a visit from his mother, his sister and another girl. Before that visit he told Grundhoefer that he expected to have a gun, which proved to be a true prophecy. After answering the call and having his case continued until September the defendant was returned to the bull-pen. When his name was called to be taken from the bull-pen to the county jail he started in the wrong direction and got back of bailiff Kavanaugh, stuck a gun in Kavanaugh's stomach, and said, "I've got a gun here; get down on your knees, you son-of-a-bitch." Kavanaugh got down on his knees and Scheck then told him to get in the bull-pen, and gave him a kick in the ribs. Scheck then started out by way of Judge Molthrop's chambers and court room, where a trial was in progress, being preceded by Grundhoefer. At that time John Sevick, a policeman in plain clothes, was on duty in Judge Molthrop's court room. Kavanaugh shouted a warning that a man was loose with a gun, and the policeman, Sevick, drew his revolver and attempted to prevent the escape. There was some shooting inside the court room and more shooting in the hall, after which Sevick staggered back into the court room with a mortal wound in his heart, from which he died within a minute or two. The defendant ran down several flights of stairs to a lower floor in the court building, where he was captured by a policeman on duty in connection with the State's attorney's office. At the time of his capture he vainly snapped his gun several times at the man who captured him, but it was incapable of further discharge, all of his ammunition having apparently been used up in the encounter with Sevick.

The State proved the facts in the case by sixteen witnesses and three exhibits, which included the gun used by

the defendant, the gun used by the policeman and the bullet which was extracted from the policeman's body. The State also introduced in evidence the three indictments against the defendant hereinabove mentioned, for the purpose of proving the reason why he was present in Judge Molthrop's court, the reason why he might wish to be elsewhere, and in general the motive for his desperate effort to escape. The defendant seeks a reversal of the judgment on the contention that the introduction of these indictments in evidence was error, and also upon a claim of allegedly prejudicial and inflammatory remarks of the assistant State's attorney who tried the case for the People.

The record must be considered in the light of the manner in which the case was tried. Although no defense was made on behalf of the defendant, and although at the close of the trial, after the State had made its opening argument to the jury, the attorney for the defendant quite freely stated and admitted that the defendant was guilty of murder, yet the fact remains that the case was before the court on a plea of not guilty, making it incumbent upon the State to prove every element of the crime of murder beyond a reasonable doubt. The defendant did not see fit to enter a plea of guilty and then introduce before a judge whatever evidence he might have in mitigation of his offense, but chose rather to take a chance that a jury might give him something less than the death penalty, thereby placing the State's attorney in such a position that it was not only proper but necessary for him to introduce all of the evidence which might tend to prove the guilt of the defendant and the degree of his culpability. It is apparent from the entire argument of the attorney for the defendant, which appears fully in the record, that the jury was selected and its personnel chosen with the single idea of trying to get something less than the death sentence, and that a jury to his satisfaction was obtained without using all of his peremptory challenges.

When the indictments in question were first offered in evidence the attorney for the defendant offered to stipulate that the defendant was in custody by virtue of "an indictment" but refused to stipulate any further. This offer was refused by the State's attorney and the court permitted him to introduce the records themselves. It was contended by the plaintiff in error that the real purpose of the State's attorney was to create prejudice against the defendant, and that, inasmuch as the crime was fully proved, it was unnecessary for the State to prove a motive. On this point this court has held quite to the contrary. We find the following language in the case of *People* v. *Munday,* 293 Ill. 191: "At the beginning of the trial it was admitted by the defendant that on June 11, 1914, the bank was insolvent and the defendant knew it, and objections were made to the State introducing any evidence to show the insolvency of the bank and the knowledge of the defendant. His plea was not guilty, and he could not prevent the introduction of competent evidence to prove every element of the crime charged by admitting a part of them. The People were entitled to present to the jury all the facts in order that they might have proper weight in determining a criminal intention and what the verdict ought to be, as well as to decide whether the punishment should be by a fine, only, or by fine and imprisonment. [Citing cases.] It is said that the only effect of the evidence was to create prejudice against the defendant, and it is undeniable that proof of criminal acts tends to create a feeling of prejudice against the guilty person, but that results in every criminal prosecution and furnishes no good ground for excluding evidence of such acts."

In *People* v. *Watkins,* 309 Ill. 318, the plaintiff in error had been convicted of the murder of a police officer, which occurred during an attempt to arrest the defendant and others. On the trial of the case the State was permitted to prove that ten days before the murder the Tri-City State

Bank at Madison, Illinois, had been robbed of some $13,000, and witnesses were permitted to testify on the murder trial that one of the men who were being arrested at the time of the murder was one of the men who had robbed the bank, and that the defendant was the driver of the automobile and waited in front of the bank until the robbers came out. In that case it was held, as it had previously been held in the case of *People* v. *Spaulding,* 309 Ill. 292, that the fact that evidence offered proved, or tended to prove, an offense other than the one with which the defendant was charged, constituted no objection to its admissibility, and that when such evidence is offered the same considerations with respect to admissibility arise as upon the offer of any other evidence. The only question in such a case is whether or not the evidence is relevant and whether or not it tends to prove any fact material to the issue involved. (*People* v. *Jennings,* 252 Ill. 534; *Farris* v. *People,* 129 id. 521.) In the course of the opinion in the *Watkins case* the court said: "When a suspected person attempts to escape or evade a threatened prosecution it may be argued that he does so from a consciousness of guilt, and so it is admissible for the prosecution to show that the prisoner killed an officer in attempting to escape. (*People* v. *Johnson,* 286 Ill. 108; 2 Wharton on Criminal Evidence, (10th ed.) 1495.) Where a deliberate criminal act is established by the evidence the People are not required to prove a motive for the act, (*People* v. *Corder,* 306 Ill. 264,) but the presence of a motive which would lead the accused to commit the act charged is important in the consideration of the question of whether he committed it, and it is always proper for the People to prove motive when it can be done.—*People* v. *Zammuto,* 280 Ill. 225."

The principle announced in the *Watkins case,* and in other cases cited by it, both as to the propriety of proving motive when it is possible for the State to do so, regard-

less of its necessity, and as to the admissibility of evidence which proves or tends to prove the main issue in the case, and regardless of whether or not it may disclose the commission of other crimes by the defendant, is so well established in Illinois and approved by so many cases that it is unnecessary for us to abstract or quote in detail from them. Some of the other cases in point on this question are the following: *People* v. *Lenhardt,* 340 Ill. 538; *People* v. *Durkin,* 330 id. 394; *People* v. *Swift,* 319 id. 359; *People* v. *Horn,* 309 id. 23; *People* v. *Hall,* 308 id. 198; *People* v. *Mandrell,* 306 id. 413; *People* v. *Cione,* 293 id. 321; *People* v. *Duncan,* 261 id. 339.

The plaintiff in error contends that because his counsel offered to stipulate before the jury that plaintiff in error was in Judge Molthrop's court under an indictment, such was a sufficient reason for excluding all evidence as to the indictment under which he was held. The State's attorney insisted he had a right to go further and that he was not barred from introducing his proof because of an offer to stipulate. In this position he was right, as shown by the authorities hereinbefore cited, and the trial court so ruled. It has never been held that the State is barred from proving a fact because the defendant offers to admit it, but, on the contrary, the rule is that when a trial is upon a plea of not guilty the State is permitted to go ahead and introduce its full proof of the crime charged in the indictment. *People* v. *Munday, supra.*

In a case such as the one now being tried it is apparent that the difficulties and dangers of the prisoner's position and the nature and number of the charges against him might have a distinct bearing upon his desire to escape and upon the degree of reckless desperation with which it might be attempted. One charged with petty larceny would not have the same motive for avoiding trial and possible conviction as one under indictment for robbery while armed. One charged with bigamy would not reasonably be ex-

pected to display the same reckless disregard of consequences in attempting to free himself as one indicted for murder. A person under a single charge on account of a minor infraction of the criminal law would hardly take the same risks and incur the same penalties to get away as one charged with two separate armed robberies and a murder. Upon conviction on these charges he would certainly forfeit his liberty for a long period of years and perhaps for life, in addition to the very distinct possibility of forfeiting life itself. Under such circumstances one might expect such a desperate and homicidal break for liberty as occurred in this case. The State was entitled to prove what any reasonable man would want to know, viz., "Why was Scheck so anxious to get away?" On this issue and for this purpose the proof of the indictments was proper, although the State might have adopted some other method of proof. Had the plaintiff in error been in custody on a preliminary hearing when he made his mad break for freedom it would have been competent for the State to prove his commission of the other crimes by witnesses as evidence of his motive for escape, so long as the details of those crimes were not put in evidence. It would not have been competent to show the details of what was said and done at the commission of these crimes, as was held incompetent by this court in *People* v. *King*, 276 Ill. 138, but it could have been shown that the crimes had, in fact, been committed by the defendant and their general nature, quality and degree put in evidence, and having been put in evidence they could properly have been commented upon as showing a motive for the desire of the prisoner to escape from court.

The only other contention advanced by the plaintiff in error is to the effect that his rights were prejudiced by the closing argument of the assistant State's attorney who tried the case for the People. The language specifically .

objected to is as follows: "And you gentlemen recall as to the recitals of that indictment a shot-gun was used, and another poor civilian named Mueller passed on to his God for a rough-and-ready judgment at his hand." Upon the making of this statement counsel for the defendant said, "Your honor, I am excepting to that line of argument." Thereupon the court said: "Well, of course, counsel should not have argued that case, as the indictment of that case is no evidence of guilt. It is merely the formal charge—no evidence here that this defendant was guilty of that indictment. I will have to sustain the objection." The counsel for the defendant then said, "I ask your honor to rule it improper." Thereupon the court said, "It is improper argument." Although this remark would be improper if wrongly understood by the jury, it is unfair to judge the case by this one sentence taken from the argument of counsel. In the opening argument for the State, as shown by the record, the assistant State's attorney used the following language: "And now we want to be altogether fair about this. We don't know anything about those indictments against John Scheck except that those are the indictments that we have here. * * * An indictment is not to be considered as evidence, but they indicate the reason why John Scheck was in the court room of Judge Molthrop this morning, and they indicate a reason why he wanted to get out of the court room of Judge Molthrop that morning at any cost and at any price, and the price of a human life was not too high for this daring attempt. * * * Now, these are just the indictments and they are not evidence, but their introduction here for that purpose only is evidence. * * * Those [indictments] were the three reasons why Scheck was in Judge Molthrop's court room and those were the three reasons why he did not want to be there. What he did in order to evade that responsibility was told to you consistently, consecutively and truthfully, I am sure, by one witness after another."

On behalf of the defendant in error, his counsel, in arguing to the jury, assured them that he had selected men who were fair enough to admit that they had read the newspapers about the case, and that he had a jury to his liking and had not exhausted his peremptory challenges. It was frankly admitted in that argument that the defendant was guilty of murder, the only effort being to confine or limit the punishment to a long term of years or for life. It was his argument that the public would be better served by committing the defendant to the penitentiary for the rest of his life, where he might be a living example to "potential killers," such as were in the habit of robbing with a gun, rather than to burn him in an electric chair. In reply to this line of argument the State's attorney in his closing argument stated that the plaintiff in error here, and his companions, were "potential killers" when they were attempting to escape while armed.

No request was made of the trial court that a mis-trial be declared or the jury discharged, and everything which was asked to be done was done for the protection of the interests of plaintiff in error. Furthermore, at the close of all of the evidence the court gave to the jury sixteen instructions which fully, fairly and completely presented the law in the case. Among those instructions was one which in positive and definite terms advised the jury that the indictments which had been offered in evidence "are mere formal charges by which the defendant, John Scheck, is to be brought to trial, and of themselves constitute no evidence whatever of the guilt of the defendant in those particular indictments, and you have no right to consider those indictments as evidence of any kind, that the defendant, John Scheck, is guilty of any one of the crimes charged in said indictments Nos. 69391, 69193 and 69194." The court further instructed the jury: "If, in putting in the evidence, or in argument, counsel for either party has made any statement not based upon the evidence, or if counsel

made any statement which he afterward withdrew, or which the court afterwards struck out, the jury should wholly disregard such statements."

When we consider the full arguments of both parties in connection with this case, the ruling and announcement of the court, the fact that the court granted the defendant exactly what he asked for in connection with that ruling, together with the subsequent instructions to the jury, we feel that due process of law has been accorded and a fair trial had. Certainly it would be unfair to select one or two sentences out of an argument for criticism without considering the argument as a whole. The State's attorney, as above pointed out, had in his opening argument clearly told the jury that those indictments were not to be considered as any evidence of guilt. They were told that again and again throughout the trial. It must be conceded that there can be little or no use in admitting evidence if the prosecutor is to be denied all right to comment on it. The indictments charging the defendant with the murder of Mueller, and the armed robbery of other citizens, were, as we have seen, properly admitted in evidence. The whole record shows that the consideration of these indictments and all comments on them were kept within due bounds by the prompt rulings of the court and the instructions to the jury. On the whole record we are satisfied that defendant was accorded a fair trial and due process of law. That in trying to rise above that law his life has been declared forfeit by a jury is entirely due to his own disregard of those rules which must be sternly enforced if people are to live together under an orderly form of government, and we can see no sufficient reason for interfering with the verdict.

The judgment of the criminal court of Cook county is affirmed, and the twentieth day of April, 1934, is fixed as the date for carrying into effect the original judgment and sentence of death.          *Judgment affirmed.*