233 So.2d 634 (1970)
Marie Dean ARRINGTON, Appellant,
v.
STATE of Florida, Appellee.
No. 38661.
Supreme Court of Florida.
April 1, 1970.
*635 Edward R. Kirkland, Orlando, for appellant.
Earl Faircloth, Atty. Gen., and J. Christian Meffert, Asst. Atty. Gen., for appellee.
PER CURIAM.
Appellant directly appeals a first degree murder conviction without recommendation of mercy for the slaying of Vivian June Ritter, secretary to the Public Defender in Leesburg, Lake County, Florida. Article V, Section 4(2), Florida Constitution, F.S.A.
Briefly stated, the facts are these. On April 22, 1968, the deceased drove her 1965 white Chevrolet to work at the Public Defender's office. In the early afternoon of that day, it was discovered that the deceased was missing from the office, and certain evidence indicated an abrupt departure. A search for her whereabouts proved fruitless. On April 27, 1968, the badly decomposed body of the deceased was discovered several miles away from Leesburg.
Numerous witnesses gave testimony at trial which directly or indirectly linked the appellant with the crime. Some of these witnesses knew the appellant well. A taxi driver said he dropped off appellant a half-block from the Public Defender's office on the morning of April 22. Shortly thereafter an insurance agent, who knew the deceased personally, testified that as he was passing the office in his car, he saw the deceased and the appellant enter into the Ritter car by themselves. Around noontime the Ritter car passed through an orange grove on a narrow, sand road. The car resembled one which workers in the grove were expecting. Their supervisor walked over to the road to meet it. As the car came closer, the supervisor observed it closely and realized that it was not the one which the workers were expecting. The car passed at moderate speed not more than three feet from the supervisor. At trial the supervisor testified that she saw the deceased and the appellant alone in the car. Within an hour the grove workers heard shots. Other witnesses testified that they saw appellant driving alone later in the day in a white Chevrolet. Appellant's mother testified that she picked up appellant several miles from Leesburg and that appellant left a white Chevrolet when she entered her mother's car. Appellant's landlady testified that she once gave appellant a .22 caliber revolver which appellant never returned to her. Ballistic tests established that the deceased had been killed with a .22 caliber revolver.
Police officials testified that, after appellant voluntarily presented herself to the police, she led them to an envelope which *636 had been secreted under a bath tub in the house where appellant was staying. The envelope contained personal effects of the deceased and an unsigned letter addressed to the Public Defender. The letter stated in effect that Mrs. Ritter would be murdered unless three unspecified persons were released from custody. The officials testified that appellant told them that she had been given this letter by certain other persons, whom she could not identify, for her delivery to the Public Defender, and that she thought the police would want to know about it.
Police officials also testified that appellant admitted being at the Public Defender's office on April 22, but that she claimed that she was forced by unidentified persons who were already there to get into the Ritter car along with the deceased. The officials testified that appellant said that she was eventually released unharmed and that the letter was subsequently delivered to her.
It was theorized by the prosecution in closing argument that the appellant was dissatisfied with the convictions of two of her children who had been unsuccessfully defended by the deceased's employer, and that this dissatisfaction led to the abduction of the deceased and her eventual murder by appellant acting alone. Closing argument of the defense went to the sufficiency of the evidence and to the question of whether the prosecution had proved its case beyond a reasonable doubt. The jury returned a guilty verdict and mercy was not recommended.
Appellant has raised several points on appeal and we have considered them all. The only points warranting discussion are those involving appellant's offer to stipulate as to the identity of the corpse thought to be that of the deceased and the cause of death. We think it necessary to make certain preliminary comments before briefly disposing of these points.
A stipulation is a voluntary agreement between opposing counsel concerning the disposition of some relevant point so as to obviate the need for proof or to narrow the range of litigable issues. The beneficial aspects of stipulations in terms of conserving time, money and effort are universally recognized. But it is also recognized that stipulations may be employed as tactical devices by a party who seeks to reduce the effect of his opponent's procession of evidence. In criminal trials defendants frequently seek to stipulate as to the existence of certain evidence in an attempt to obviate what Wigmore has referred to as "the legitimate moral force" of such evidence. Wigmore, Evidence, § 2591 (3rd Ed. 1940). We have encountered this use of stipulations before. See Whitney v. Cochran, 152 So.2d 727 (Fla. 1963).
In such cases a criminal defendant will often proffer a stipulation which the prosecution refuses to accept. In some jurisdictions the courts view such an offer as an admission which becomes a matter of record and which serves to obviate any further need of presentation of evidence by the prosecution regarding the subject matter of the stipulation. However, most jurisdictions take the position that an offer to stipulate remains merely an offer unless accepted by the prosecution. As an example of the latter position, we offer the following excerpt from People v. Speck, 41 Ill.2d 177, 242 N.E.2d 208 (1968) at 221:
"Counsel for the defendant says that he was willing to stipulate to the identity of the girls and to the fact that they had met their deaths by criminal means. However, the defendant pleaded not guilty and the State had the right to prove every element of the crime charged and was not obligated to rely on the defendant's stipulation. (People v. Botulinski, 392 Ill. 212, 64 N.E.2d 486.) As stated in People v. Scheck, 356 Ill. 56, 62, 190 N.E. 108, 111, 91 A.L.R. 1472: `It has never been held that the state is barred from proving a fact because the defendant offers to admit it, but, on the contrary, *637 the rule is that when a trial is upon a plea of not guilty, the state is permitted to go ahead and introduce its full proof of the crime charged in the indictment.'"
We endorse this language as the position of this court. This is not to say that there can be no check on the prosecution's procession of evidence. The submission of evidence remains subject to the safeguard of objections raised on traditional grounds. The question then is not whether a stipulation should be accepted, but rather whether or not the presentation of evidence would violate standards of relevancy and materiality and the like and whether it would be merely cumulative or inflammatory. Thus while a court cannot force acceptance of an offer to stipulate upon the declining party absent proof of prior acceptance or acquiescence, the court can entertain objections to submission of evidence which are based upon traditional grounds.
We have made these observations because, during the trial, appellant's counsel insisted that the identity of the corpse and the cause of death were not at issue since the appellant was prepared to stipulate that it was Mrs. Ritter's corpse and that she died of gunshot wounds in the head.
The prosecution declined to accept these stipulations and proceeded with its evidence. Appellant's counsel continued to object to presentation of such evidence on the ground that its offer to stipulate had been recognized by the court. The jury was excused and the status of the proffered stipulations was discussed. The prosecution maintained that it had not accepted any stipulations and the defense maintained that the stipulations had been accepted by the court. Apparently the prosecution acquiesced and when the jury returned, the judge announced the stipulations. Had the prosecution not acquiesced, we think it would have been improper for the trial judge to have announced that appellant's offers to stipulate had been accepted since the essence of stipulation is agreement between opposing counsel.
We now turn to appellant's issue regarding stipulations. Appellant argues that since the stipulations were accepted, the trial court erred later on when it allowed admission of evidence relating to the cause of death. There is no merit in appellant's contention. It is patently clear that the stipulations were not so broad in scope as to foreclose evidence and testimony relating to the prosecution's theory of premeditation. State v. Upton, 60 N.M. 205, 290 P.2d 440 (1955); Powell v. State, 40 Ala.App. 148, 109 So.2d 525 (Ct.App. 1959).
Having considered the assignments of error and having examined the entire record as required by Fla. Stat. § 924.32(2), F.S.A., we are satisfied that appellant was justly convicted and the judgment is affirmed.
It is so ordered.
ERVIN, C.J., and ROBERTS, DREW, CARLTON, ADKINS and BOYD, JJ., concur.
MANN, District Court Judge, dissents with opinion.
MANN, District Court Judge (dissenting).
There is no "legitimate moral force" to inadmissible evidence that the victim of murder had three children. I quote the entire section from Wigmore from which the majority take a sentence:
"§ 2591. Same: (2) Prohibitive of Evidence by the Party benefiting. A fact that is judicially admitted needs no evidence from the party benefiting by the admission.
"But his evidence, if he chooses to offer it, may even be excluded; first, because it is now as immaterial to the issues as though the pleadings had marked it out of the controversy (ante, § 2); next, because it may be superfluous and *638 merely cumber the trial (ante, §§ 1863, 1904); and furthermore, because the added dramatic force which might sometimes be gained from the examination of a witness to the fact (a force, indeed, which the admission is often designed especially to obviate) is not a thing which the party can be said to be always entitled to.
"Nevertheless, a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate moral force of his evidence; furthermore, a judicial admission may be cleverly made with grudging limitations or evasions or insinuations (especially in criminal cases), so as to be technically but not practically a waiver of proof. Hence, there should be no absolute rule on the subject; and the trial Court's discretion should determine whether a particular admission is so plenary as to render the first party's evidence wholly needless under the circumstances."
The portion quoted by the majority better describes cases like Williams v. State, Fla. 1969, 228 So.2d 377. In that case this court held that an "offer of stipulation does not cut off the right of opposing counsel to proceed if such continuation is relevant to proof of the remaining issues of the case." (Italics supplied). But that evidence was otherwise admissible and this evidence was not. In fact, the prosecutor in this case told the jury in opening argument that he would prove the identity of the victim by her dentist, which he did, and properly so, and went on to say that her "fingers were taken from the body and matched with fingers taken from the birth certificates of Mrs. Ritter's children." Objection was raised and a sufficient admission of identity was offered prior to this portion of the argument. After proving identity by the testimony of the dentist who had made, and at trial identified, a partial plate worn by the deceased, the prosecutor put the victim's obstetrician on the stand, again over objection. "Did you deliver any children for her?" he asked. "I delivered three babies," replied the physician. A motion for mistrial was then made, whereupon, the jury having heard the prejudicial evidence about the three babies, the State accepted the stipulation and the witness was excused.
Even in the absence of the proffered stipulation, the testimony of the second witness was excessive and inflammatory for reasons explained by Judge Rawls in reversing a conviction in a case in which the victim's wife and sister were called to identify the deceased. Gibson v. State, Fla.App. 1966, 191 So.2d 58. All of the precedents of this court are in accord. Melbourne v. State, 1906, 51 Fla. 69, 40 So. 189; Rowe v. State, 1935, 120 Fla. 649, 163 So. 22. See also Hathaway v. State, Fla. App. 1958, 100 So.2d 662; Annotation, 67 A.L.R.2d 731.
Whitney v. Cochran, supra, is not in point. There the defendant sought to repudiate, in post-conviction proceedings, stipulations accepted by the state which he hoped would avert the death penalty but didn't. People v. Speck, supra, approved the rejection by the state of a proffered stipulation as to identity, but said that there was "no undue emphasis, in the proof or in argument, of the fact that the victims left a family surviving, and cases such as People v. Bernette, 30 Ill.2d 359, 197 N.E.2d 436, and People v. Dukes, 12 Ill.2d 334, 146 N.E.2d 14, 67 A.L.R.2d 724, are not applicable." 242 N.E.2d at 221. We are not told in this opinion what the nature of the testimony was. Bernette and Dukes are pertinent.
I would hold that a prosecutor cannot reject an adequate and unqualified stipulation solely for the purpose of allowing the introduction of testimony otherwise prejudicial and inadmissible.