THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. DAVID TIELKE, Plaintiff in Error.

*Opinion filed June 18, 1913.*

1. CRIMINAL LAW—*when confession or admission may be implied.* An admission or confession may be implied from the conduct of a person in remaining silent when charged with a crime or complicity therein, or when statements are made by third persons in his presence, affecting him, under circumstances which afford him an opportunity to deny his guilt or make explanations, as ordinary men similarly situated would naturally do.

2. SAME—*jury determines weight to be given to implied admissions.* Implied admissions of guilt are admissible upon the theory that the accused, by remaining silent when the statements imputing his guilt are made in his presence, has ratified such statements and adopted them as his own, but it is for the jury to say what bearing the evidence has upon the issues and the weight to be given to it.

3. SAME—*when testimony by police officers is admissible.* Police officers may testify, in a burglary trial, that the sister of the accused stated to them, in his presence, that a certain cut in his hand had been made while he was slicing a melon and that the shoes and hat found on the burglarized premises were not his, but that at a later interview, in his presence, she stated to him that he had better make a clean breast of it, whereupon he stated that his hand had been cut in a fight with certain men and that the coat and shoes were his but had been taken from him by the men he fought with.

4. SAME—*when accused is not harmed though testimony was inadmissible.* Where the testimony of the accused in his own behalf is in accord with the testimony of police officers as to statements made to them by the accused and his sister, he cannot be said to have been harmed by the admission of the testimony of the police officers even though such evidence may have been improperly admitted.

5. SAME—*when a party is not entitled, as a matter of right, to cross-examine his own witness.* The mere fact that a witness called by the accused makes a statement, on cross-examination, which counsel for the accused claims is different from his statements at other times, does not entitle the accused, as a matter of right, to have the court interrogate the witness as a witness for the court, in order that counsel for accused may cross-examine him.

6. SAME—*reasonable doubt of guilt must be one arising upon the evidence.* It is not the province of the jury to go beyond the evidence to create doubts which are chimerical or conjectural, as the reasonable doubt which will justify an acquittal must be one arising from a candid and impartial examination of the evidence, and if, after considering all the evidence, the jury have an abiding conviction of the truth of the charge, then they are satisfied beyond a reasonable doubt.

7. SAME—*when conclusion of instruction as to considering testimony of accused is not improper.* An instruction concerning the weighing of the testimony of the accused is not erroneous which concludes with the statement that if the jury, after considering all the evidence in the case, shall find that "any witness testifying on behalf of either side has willfully and corruptly testified falsely as to any fact material to the issue in this case, then they have a right to disregard the testimony of such witness, except in so far as corroborated by other credible evidence or facts and circumstances in evidence."

8. SAME—*when an instruction is properly refused as selecting certain facts and ignoring others.* An instruction tendered by the accused in a burglary trial is properly refused which attempts to state the law upon the subject of identification by referring to the testimony of a single witness and ignoring all the other testimony. in the record upon that subject.

9. SAME—*affidavits must be incorporated in the bill of exceptions.* Affidavits as to what took place in the court room during the trial are not intrinsically a part of the record and are not made so by the fact that the clerk has incorporated them therein, but they can only be made a part of the record by incorporating them in the bill of exceptions.

WRIT OF ERROR to the Circuit Court of Stephenson county; the Hon. RICHARD S. FARRAND, Judge, presiding.

PATTISON & SHAW, for plaintiff in error.

P. J. LUCEY, Attorney General, ALBERT H. MANUS, State's Attorney, and GEORGE P. RAMSEY, for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

The plaintiff in error was tried and convicted in the circuit court of Stephenson county on the charge of burglary. After judgment was entered this writ of error was sued out.

From the evidence in the record it appears that on the night of July 8, 1912, a man entered, through a window in the basement, the residence of Thomas Holmes, in the city of Freeport, in said county. Holmes himself was absent, the house being occupied that night by his wife and his two children,—a boy of nine and a girl of six,—all three sleeping in the same room up-stairs. They retired about nine o'clock. Mrs. Holmes testified that they went to sleep almost immediately, and the first thing she remembered was being awakened by a man striking her over the head with his fist; that she commenced to "holler," and that he then grabbed her by the neck and struck her with one hand and choked her with the other; that the little boy screamed and cried and then went to an outer door and called for help; that thereupon the man ran out into the hall and down the stairway and jumped through the glass of the front door without stopping to unlock it; that the man who was attacking her had on a blue shirt, gray trousers and a derby hat pulled down well upon his head. She testified that a lamp which was kept burning in the hall enabled her to see the intruder, and she identified plaintiff in error as the man who was in her room on the night in question. She further testified that after he broke through the front door she ran to a door opening onto the porch on the second floor and saw the man running back on the driveway toward the barn; that at that time she heard her neighbor, Mrs. Keeler, call to her husband to get a revolver, and the man then turned and ran out to the street. Mrs. Keeler testified to the same effect as to the man changing the direction in which he ran at the time she called to her husband. Blood was found on the pieces of glass broken out of the front door. A coat and shoes were found next morning in the barn on the Holmes lot. In one of the coat pockets was a bottle of whisky. A loaded revolver was found the next morning on the ground near the open basement window, through which the evidence tends to show the man entered

the house. The plaintiff in error was arrested the next day. His left hand was found bandaged, having a V-shaped cut, apparently recently made.

Plaintiff in error was thirty-three years old and was employed in Freeport by a contractor to mix mortar. He was married in 1908, but when sent to the penitentiary for burglary, in 1909, his wife obtained a divorce. After he was released they lived together as husband and wife, without being re-married, until the time of this offense, having one child born to them. On the evening of July 8 in question the plaintiff in error, his former wife, their child, and Tielke's sister, (Mrs. Schadle,) went down-town to visit a street carnival then being held in Freeport and stayed down a couple of hours, plaintiff in error going alone to a side show, leaving his wife and sister on the street seeing the sights. They all testified they went home a little after ten o'clock. Plaintiff in error first told after his arrest that he received the wound in his hand in attempting to cut a melon after they returned home that evening. His sister, Mrs. Schadle, made the same statement to the police, in the presence of plaintiff in error, shortly after his arrest. They all three testified that shortly after eating the melon plaintiff in error went out onto the street again and came back along about 12:30, when he went to bed with his former wife and remained in the house until morning. His testimony as to what occurred after he went out the second time was, in substance, that he was a part of the time in a saloon drinking with some friends, one of whom he named but stated he could not remember the name of the other; that when on his way home (somewhat intoxicated) he noticed that he was being followed by two men, and that after a time he turned around and asked them, with an oath, what they wanted of him, and one of them answered, "We want you;" that he pulled off his coat and knocked one of them down and that one pulled a knife and cut him in the hand; that they told him to take off his shoes, which he did; that

they then told him to take off his pants, and he swore and said he wouldn't do it and ran away from them and to his home, where his wife helped dress his hand; that this was the last he saw of his shoes and coat until they were shown by the police. He stated that he thought one of the men who attacked him was the ticket seller of one of the side shows, with whom he had trouble over short change when he bought a ticket that evening to the show. As has been stated, he first told the police that he cut his hand cutting a melon after he got home, about half-past ten. He also stated at first that the shoes and coat found at the barn did not belong to him. Later on, at a second or third interview with the police, in the presence of his sister, two policemen and the prosecuting attorney, he was told by his sister that he had better make a clean breast of it, and he thereupon stated that his hand was cut in a fight and that the shoes and coat in question belonged to him; that they had told a falsehood at first in regard to these two matters. Shortly after he was arrested he was taken by the police to Dr. Leavy to have his hand examined, and the doctor said, in his presence, that the wound had not been dressed by a physician, and plaintiff in error thereupon stated that he had bandaged it himself. The officer asked the doctor what, in his opinion, had made the cut, and the doctor answered that it looked like a glass cut, and plaintiff in error stated that he had cut it with a knife while cutting a melon. Dr. Leavy testified that the cut looked as if it had been made the day before. Dr. Snyder, who examined the cut shortly after it was made, testified for plaintiff in error that while it looked as if it had been made with some cutting instrument, in his opinion it was not made by glass.

Counsel for plaintiff in error first insist that the trial court erred in admitting, over their objection, the testimony of the police officers as to Mrs. Schadle's statements to them, in plaintiff in error's presence, that the wound on the hand was made while cutting a melon and that the coat and

shoes in question did not belong to Tielke, and also the testimony of the police as to Mrs. Schadle's statement, at a later interview, that he might as well make a clean breast of it, whereupon he stated that the cut was made in a fight, as heretofore stated, and that the coat and shoes belonged to him. An admission or confession may be implied from the conduct of a person in remaining silent when charged with a crime or complicity therein, or when statements are made by third persons in his presence affecting him, when the circumstances afford him an opportunity to act or speak in reply and men similarly situated would naturally deny the guilt imputed or make explanations as to the statements. (*Ackerson* v. *People,* 124 Ill. 563.) This class of evidence is admitted on the trial of the person accused, on the ground that he has expressly or impliedly ratified and adopted it as his own statement. The bearing it has upon the issues and the weight to be given to it are to be determined by the jury in view of all the surrounding facts and circumstances shown by the evidence. Mrs. Schadle's statements, testified to by various witnesses as having been made in the presence of plaintiff in error, were admissible, not to impeach her statements, (as she had not testified at that time,) but because they were made in plaintiff in error's presence, and the evidence clearly shows that he impliedly assented to their truth if he did not directly adopt them as his own. The remark of Mrs. Schadle, in plaintiff in error's presence, as to making a clean breast of it was properly admissible, not as evidence in itself, but to enable the jury to understand his reply. (*Watt* v. *People,* 126 Ill. 9; see, also, *People* v. *Koerner,* 154 N. Y. 355.) The trial court's rulings as to the admission of this testimony are sustained by the following among many other authorities: *Gannon* v. *People,* 127 Ill. 507; *Waller* v. *People,* 175 id. 221; *Gilman* v. *People,* 178 id. 19; Wharton on Crim. Evidence, (8th ed.) sec. 679; 1 Ency. of Evidence, 367; Gillett on Indirect and Collateral Evidence, secs. 5, 7; 12 Cyc.

420, 432, and cases cited. See, also, an exhaustive review of the authorities in accord with this holding in a note to *O'Hearn* v. *State,* (Neb.) 25 L. R. A. (N. S.) 542.

It is proper to state in this connection that Mrs. Schadle testified in the case for plaintiff in error and did not deny any of the statements imputed to her by the witnesses in question. Furthermore, plaintiff in error's testimony while on the stand was in accord with the testimony of the witnesses as to the statements of himself and Mrs. Schadle to the police, hence he was not harmed in any way by the admission of this testimony, even though such statements had been inadmissible. (*Siebert* v. *People,* 143 Ill. 571; *People* v. *Nall,* 242 id. 284.) The testimony as to what the doctor said to plaintiff in error or in his presence when dressing the hand was also admissible for the reasons given above. The doctor himself afterward testified to the same effect.

A police officer, Leslie Schafer, was called by counsel for plaintiff in error, and testified, on direct examination, that he saw him about 12:20 on the night of July 8, 1912, in front a saloon in Freeport, and that he was then wearing a small, light, cloth hat. On cross-examination he testified Tielke wore a pair of light trousers and a dark coat. On re-direct examination counsel for the plaintiff in error asked the witness if he had not told counsel that morning, in the judge's chambers, that the plaintiff in error had on a pair of dark trousers. The witness denied making such statement. Counsel then asked the judge to examine the witness as a witness of the court, so that counsel could cross-examine him. The court answered that he saw no occasion for such action. Counsel for plaintiff in error then asked the witness if he did not testify before the justice and if he had there said a word about plaintiff in error having on light trousers, and if he had not stated at all times before that the trousers were dark. To these questions objections were made, which were sustained by the

court. It is now insisted that it is evident from the record that plaintiff in error was surprised by the testimony of this witness and should have been permitted to cross-examine him at length. No attempt was made to show by other witnesses any statements that this witness had made at any other time or place contradictory to those made on the witness stand. We do not think the court limited the examination of this witness to the prejudice of plaintiff in error.

Counsel for plaintiff in error further insist that the court erred in giving to the jury the seventh and seventeenth instructions requested by the People, which were both on the subject of reasonable doubt. The seventh instruction is identical with the third instruction given for the State in *People* v. *Scarbak,* 245 Ill. 435. This court there held that it had been repeatedly approved in former decisions and contained a proper statement of the law. The seventeenth instruction states, in language that has frequently been approved by this court, that it was not the province of the jury to go beyond the evidence to hunt up or entertain doubts that were merely chimerical or conjectural; that to justify an acquittal a doubt must arise from a candid and impartial investigation of all the evidence in the case, and if, after considering all the evidence, the jury can say they have an abiding conviction of the truth of the charge, then they are satisfied beyond a reasonable doubt. An exact copy of this instruction was given as the twelfth instruction for the People in *Spies* v. *People,* 122 Ill. 1, and held to be a correct statement of the law. It has also been approved in *Miller* v. *People,* 39 Ill. 457, *May* v. *People,* 60 id. 119, *Connaghan* v. *People,* 88 id. 460, and later cases decided by this court. Nothing was said by this court in *People* v. *Barkas,* 255 Ill. 516, as argued by counsel, or, so far as we are advised, in any other decision of this court, that in any way questions the correctness of these two instructions.

It is also insisted that instruction No. 19 given for the People was erroneous. This stated the rule of law that should control the jury in considering the testimony of plaintiff in error, ending with the following: "The court further instructs the jury, if, after considering all the evidence in this case, they find that any witness testifying on behalf of either side has willfully and corruptly testified falsely to any fact material to the issue in this case, then they have the right to disregard the testimony of such witness, except in so far as corroborated by other credible evidence or facts and circumstances in evidence. The question of the weight and credit to be given to each and every witness on either side is entirely for the jury." The instruction in question, except as to the sentences above quoted, is substantially the same as the third instruction given for the People and approved by this court in *Hirschman* v. *People,* 101 Ill. 568. The last sentence in the instruction in that case, instead of those quoted above, was the following: "And the court further instructs the jury that if, after considering all the evidence in this case, they find that the accused has willfully and corruptly testified falsely to any fact material to the issue in this case they have the right to entirely disregard his testimony, excepting in so far as his testimony is corroborated by other credible evidence." A similar instruction has been approved in *Rider* v. *People,* 110 Ill. 11. It is argued by counsel for plaintiff in error that the quoted part of instruction No. 19 would lead the jury to believe that the trial judge thought plaintiff in error was unworthy of belief. Certainly the instruction, worded generally as to all witnesses, would not have as great a tendency in that direction as would the instruction in *Hirschman* v. *People, supra,* which referred directly to the testimony of the accused. The instruction in question is in full harmony with the rules of law laid down by this court as to the weight to be given by the jury to the testimony of the accused in *People* v. *Arnold,* 248 Ill. 169, *Hellyer* v. *People,* 186 id.

550, and other decisions of this court cited by counsel on the same question.

We do not think the giving of the fourteenth and fifteenth instructions in favor of the People was prejudicial to plaintiff in error.

The trial court ruled correctly in refusing the second instruction asked by plaintiff in error. It referred to the testimony of Mrs. Holmes in identifying plaintiff in error. It was objectionable because it selected, on the question of identification, her testimony alone, ignoring all the other testimony in the record tending to identify him as the man who entered the Holmes house on the night in question. An instruction which selects a part of the evidence and calls the jury's attention to it, omitting other evidence that is entitled to be considered on the same question, is calculated to mislead. *Hoge* v. *People*, 117 Ill. 35; *Clark* v. *People*, 224 id. 554; *People* v. *Casey*, 231 id. 261.

Taking all the instructions together, we think the jury were fully and fairly instructed on the law as applied to the facts shown in the record.

Counsel for plaintiff in error further contend that the interests of their client were prejudiced by disorder in the court room during the trial. Nothing is found in the bill of exceptions bearing on this question. On the motion for new trial, an affidavit sworn to by one of counsel for plaintiff in error was filed, and one by a deputy clerk of the court, bearing on this question. Eighteen affidavits were introduced in rebuttal on this point by the State, twelve of them being by the jurors who heard the case. The substance of the affidavits in behalf of plaintiff in error is, that several times during the trial of the case the audience audibly "snickered" or laughed and that once or twice they openly applauded the testimony of witnesses; that on these latter occasions they were reprimanded by the court, and on one occasion the court threatened to remove a woman in the front row who led the applause. Most of the eighteen

259 – 7

affidavits given on behalf of the People were to the effect that affiants heard no applause of any kind and only audible laughter once or twice. Some of the other affidavits given for the People state that affiants heard hand-clapping at one time on the part of one woman sitting in the front row; that the court sharply reprimanded her and threatened to have her removed if it was repeated. The affidavits for plaintiff in error set forth that the manifestations of the audience showed disapproval of the defense being made, while the affidavits for the People state that there was no indication of approval or disapproval as to the course of conduct of anyone, but, on the contrary, that these manifestations were the direct result of the talk or actions of counsel for plaintiff in error.

The affidavits on this question are not made a part of the bill of exceptions. This court has repeatedly held that affidavits and other papers not intrinsically parts of a record are not made so by the fact that the clerk has incorporated them into the record; that they can only be made part of such record by being incorporated into the bill of exceptions. (*Smith* v. *Wilson*, 26 Ill. 186, and cases cited; *Drew* v. *Beall*, 62 id. 164.) This is the general rule followed in other jurisdictions. (1 Ency. of Pl. & Pr. 336; 1 Thompson on Trials,—2d ed.—962; 2 id. 2774; *Evans* v. *Stettnisch*, 149 U. S. 605; *Baltimore and Potomac Railroad Co.* v. *Sixth Presbyterian Church*, 91 id. 127.) These affidavits not being incorporated in the bill of exceptions, cannot, under this rule, be considered by this court.

We find no reversible error in the record. The judgment of the circuit court will therefore be affirmed.

*Judgment affirmed.*