(No. 19133.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HAROLD WITT *et al.* Plaintiffs in Error.

*Opinion filed December 20, 1928.*

JAMES HARTNETT, THOMAS D. NASH, and MICHAEL J. AHERN, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and G. E. NELSON, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here by writ of error to review the judgment of the criminal court of Cook county entered on a verdict of the jury finding the plaintiffs in error, Harold Witt and Herbert Deinert, guilty of robbery of the Bryn Mawr State Bank, in the city of Chicago, on December 9, 1924, while armed with guns. The indictment was laid under the Habitual Criminal statute, and the plaintiffs in error were sentenced to the State penitentiary at Joliet for the term of their natural lives.

The robbery was perpetrated by four men armed with revolvers, who held up the bank officials and employees, forced them into a vault, compelled the opening of the compartment in which cash was kept, and took therefrom the

sum of approximately $16,700. In March, 1926, Mario Chiostri and Walter Shoultens were tried on this charge and convicted. Their conviction was affirmed by this court in *People* v. *Shoultens*, 326 Ill. 263. The indictment in this case was returned November 23, 1927. Plaintiff in error Witt was positively identified by Allen D. Whitney, vice-president of the bank, and by Claude Edward Rowe, cashier of the bank, as one of the men participating in the robbery. Whitney testified that he was opening his mail and his attention was drawn to loud talking, and he looked up and saw a man pointing a gun at him, who ordered him to hold up his hands; that he was told to go back into the vault; that as he passed the vault door he tried to throw the bolts, but one of the men thrust a gun against his side and told him to move along; that when he went into the vault Witt stood near him at the threshold or doorway of the vault and witness had occasion and opportunity to see him; that he was standing close to Witt for approximately a minute or more while another of the men was getting the money, and that he later saw Witt at the Woodlawn police station and identified him. Daniel Carroll, a teller of the Bryn Mawr Bank, testified that four men entered the bank with guns; that plaintiff in error Deinert was one of them; that he was standing outside the witness' cage, about four to six feet from him, and told him to put up his hands; that he was commanded to walk backwards out of the cage and into the vault of the bank; that when the men came in the bank one of them came to the cage near his window and asked to have a five-dollar bill changed; that Deinert was not the man who asked for the change of the five-dollar bill but was the one who held the gun on him and told him to back out of the cage; that the man who asked for the change was Shoultens. He was positive in his identification of Deinert. Claude E. Rowe, cashier of the bank, testified that four men entered the bank with drawn guns and ordered him and others in the bank to hold up their hands. He

identified both plaintiffs in error. Identification of these men was positive.

The defense was an alibi. On behalf of Witt, Martin Andrews and his wife testified that they lived in Milwaukee, Wisconsin, on the date of the robbery; that Witt was at their house about three weeks before Christmas in 1924; that Andrews was to give employment to Witt. These witnesses also testified that Witt came to their house on Sunday, the 7th of December, 1924, and was there on the 9th. Adolph J. Steike, an uncle of Witt, also testified that on the 7th of December Witt left the city to go to Milwaukee. Witt took the stand and denied any knowledge of the robbery, and testified that he was in Milwaukee at that time.

On behalf of Deinert, the testimony of Charles Dahl was offered to show that he had worked with Deinert for Armour & Co. in December, 1924; that he saw him at his home on the 14th or 15th of that month and that he was then sick. It was sought to introduce in evidence a copy of a paper called *The Armour Oval*, for the purpose of showing that Deinert had returned to work there on January 8 after having recovered from illness. On objection this offer was refused. Ida Deinert, mother of Deinert, and Emil Deinert, his father, testified that Deinert was at home sick on December 6 and was ill for a period of ten days or two weeks but that they had no doctor. Joseph McClure testified that he saw Deinert at his home a few days before Christmas, in 1924; that he was ill at that time and was sitting up in bed. Frank Smith also testified to the same effect. Deinert took the stand and testified that he was at home sick on the day of the robbery.

The only witnesses for Deinert who testified that he was at home on December 9, the date of the robbery, were his parents. The other witnesses do not cover that particular day. On the other hand, both he and Witt are positively identified by two witnesses as having participated in the rob-

bery.  The issue of fact was one for the jury, and we would not be justified in disturbing their verdict on this record.

Prior to the commencement of the trial Witt moved to be discharged because he was not tried within four months after his arrest and commitment to jail on the charge.  He filed a motion setting out that he was arrested on the 8th day of June, 1926, and committed to jail on June 20 thereafter; that six different indictments had been returned at different times against him, one on October 15, 1926, one on July 1, 1927, one on November 4, 1927, one on November 10, 1927, one on November 16, 1927, and the one on which he was tried, returned on November 23, 1927, and that all these indictments charged the same offense.  He sets up in his motion that he was in the house of correction up to December 6, 1926; that he was in the county jail on this charge from the latter date until the time of the trial; that at the April term, 1927, he filed a motion to be discharged because four terms of court had passed between December, 1926, and April, 1927, and that he had not been tried.  The motion filed in this cause sets out that at the April, 1927, term the court overruled his motion to be discharged and that time was given in which to file a bill of exceptions.  The motion recites that the bill of exceptions was presented, signed and filed in that case, and that copies are appended to the motion in the present case to show that fact.  The abstract in this case does not show that the bill of exceptions, excepting to the ruling of the court in April, 1927, denying the motion to be discharged, was presented, signed and filed.  The motion in this case also tenders the record of the indictment at that time pending against Witt, known as indictment 41494, returned October 15, 1926, and the proceedings thereon.  Apparently the trial court in this case had that record before it in passing on the second motion.  That record discloses that the continuances from December, 1926, to April, 1927, were had on motion of the defendants, and while Witt testified that he did not make such motion and

had no counsel, the record in that case cannot be impeached in such a manner. It is evident that all the indictments returned against Witt charged this one crime, and no explanation is made concerning any necessity for the return of so many indictments on a single charge nor is there any showing that it was done without reason. Previous to the trial all but the last one was *nolle prossed.* An examination of the record discloses that the delay in the trial between April and November (the time when the cause was tried) was due to continuances, part of which were on motion of Witt and part on the motion of the State. All of these motions prior to October 25, 1927, were made by Witt.

Section 18 of division 13 of the Criminal Code (Cahill's Stat. 1927, p. 954,) provides that a person committed for a criminal or supposed criminal offense and not admitted to bail and not tried at some term of court having jurisdiction of the offense commencing within four months of the date of commitment shall be set at liberty by the court unless the delay shall happen on the application of the prisoner, or unless the court is satisfied that due exertion has been made to procure the evidence on the part of the People and that there is reasonable ground to believe that such evidence may be procured at the next term. As we have seen, the delay was for the most part caused by motions for continuance on the part of the prisoner. No exception is taken to continuances on motion of the State and no objection appears to have been made to such continuances. The fact that indictments were from time to time returned against Witt would not stop the running of the statute where the indictments all charge the same offense and where the delay in trial is not caused by the request of the defendant. We are of the opinion, however, that in this case the statute does not apply to Witt, as the delay complained of was on his own motion.

It is also urged that the court erred in refusing to allow in evidence a copy of *The Armour Oval,* hereinbefore re-

ferred to. The exhibit shows that it was printed on the 8th of January, and it contains an item that a man named Deinert had returned to work. This was nearly a month after the occurrence and no ground for the admission of such an exhibit was laid, nor do counsel indicate the ground upon which it was admissible save to refresh the recollection of other witnesses. As such other witnesses testified without the aid of this newspaper concerning the illness of Deinert, it is evident that it was not necessary for that purpose. This exhibit was not competent as evidence and the court rightly refused to admit it.

Error is also based on the giving and refusing of instructions. Complaint is made of instruction No. 4, given on behalf of the State. This instruction is one frequently used in explaining the presumption of innocence, and stated that the rule as to presumption of innocence is not intended "to aid anyone who is in fact guilty of crime to escape." It is objected that to use the words "in fact guilty" sets up no standard but leaves the question of guilt to the unguided and uncontrolled judgment of the jury; that it should be so worded as to refer to one proven guilty beyond a reasonable doubt. As the jury were clearly instructed that on all issues of fact the duty devolved on the State to prove such issues beyond all reasonable doubt, no injury could have resulted to plaintiffs in error by use of the language "in fact guilty."

It is argued that instruction No. 6 is erroneous. This instruction advises the jury that "before a defendant can avail himself of the defense of an alibi the proof must cover the whole of the time of the commission of the alleged crime so as to render it impossible or highly improbable that the defendant could have committed the act, and unless the proof in a case covers the whole time so as to render the commission of the crime by a defendant impossible or highly improbable, then that defense is not available to such defendant." This instruction has been repeatedly

approved as a proper definition of an alibi. (*People* v. *Thompson,* 321 Ill. 594; *People* v. *Schladweiler,* 315 id. 553; *People* v. *Shaw,* 300 id. 451.) Plaintiffs in error cite *People* v. *Reno,* 324 Ill. 484, as authority for their contention that this instruction is erroneous. That case does not so hold, but it was there held that the instruction there given differed from that approved in *People* v. *Thompson, supra,* and *People* v. *Schladweiler, supra,* and that in the *Reno case* the instruction was not pertinent to the facts. The instruction as to the defense of alibi in this case is correct.

It is also contended that the giving of instruction No. 9 was error. This instruction informed the jury that they were the sole judges of the credibility of witnesses, stating, among other tests to be applied, "the extent to which he is contradicted or corroborated by any other credible evidence, if at all, and any circumstances that tend to shed light upon his credibility." There should have been inserted in this instruction, after the word "circumstances," the words "in evidence" or "shown on the trial." By other instructions the jury were told that it was their duty to determine the facts from the evidence and apply to such facts the law as given them by the court, and that they should not allow anything to influence them other than the law and the evidence in the case. Viewing the instructions as a series, we are of the opinion that the jury were in nowise misled as to how they should arrive at a verdict and that the plaintiffs in error were not prejudiced by the omission in this instruction.

It is also contended that the court erred in refusing defendants' instruction No. 1. This instruction told the jury that they should consider whether the witnesses were interested in or hoped to receive any reward or benefit from the prosecution of the case or had in any other way become interested or had their feelings or passions enlisted for or against the defendant Deinert. There was no evidence that any one of the witnesses expected or hoped to receive a re-

ward, and there was therefore no basis in the evidence for this instruction. The jury were instructed that they should consider the interest of any witness in the case if any was shown.

Plaintiffs in error also complain of the ruling of the court in refusing instruction No. 4. This instruction told the jury that if there was any evidence which raised in their minds a reasonable doubt as to the presence of Deinert at the time and place where the crime was charged to have been committed they should find him not guilty. This instruction was fully covered by two other instructions given and it was not error to refuse it.

It is also contended that the court erred in questioning certain witnesses. Counsel for plaintiffs in error, on the cross-examination of People's witness Carroll, asked him the following question: "I will ask you if at the trial of *People* v. *Shoultens,* before Judge Miller, if you were not asked this question: 'Who was the one you heard give that command?' referring to the command to hold up your hands, and if you did not make this answer: 'That command was given by this man Shoultens. He had a gun stuck through the iron bars of the cage.'" The witness answered, "Yes, sir." The court said, "Well, was it true?" The witness replied, "Yes, sir; Shoultens was the man in front of my cage." Counsel for plaintiff in error said, "I object to your honor telling him." Counsel argue that this question by the court was sufficient to indicate to the jury that the court believed the defendants guilty. There is nothing in this question by the court, or in other remarks objected to, which forms a basis for such a conclusion, and this contention can not be sustained.

Plaintiffs in error were each positively identified by two witnesses. The record does not contain reversible error. The judgment of the criminal court will therefore be affirmed.

*Judgment affirmed.*