(No. 20260.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM LENHARDT, Plaintiff in Error.

*Opinion filed October 25, 1930.*

CROWLEY & CAVANAGH, (WILBERT F. CROWLEY, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and ROY D. JOHNSON, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

William Lenhardt was indicted in the criminal court of Cook county for the murder of Milton Valasopoulos. A jury found him guilty of the charge and fixed his punishment at death. Motions for a new trial and in arrest of judgment were made and denied and judgment was rendered on the verdict. By this writ of error, allowed upon his application, he seeks a review of the record.

On June 20, 1929, Milton Valasopoulos was the proprietor of a restaurant located at 803 West Seventy-fourth street in the city of Chicago. The building so occupied faces north and the restaurant consisted of a dining-room with a kitchen to the rear. The entrance to the restaurant was at the northeast corner of the dining-room. Along the west wall of that room ran a counter practically the entire length of the room. East of and parallel to this counter and separated from it by a passageway running north and south, there were placed longitudinally, from front to rear, a cigar case, a lunch counter and then another lunch counter. The ends of these counters were separated by a short passageway connecting with the longer one behind or west of the lunch counters. Along the front or east of each of these counters were six stools, and adjoining the east wall of the dining-room, were five tables placed transversely.

Early in the afternoon of June 20, 1929, there were present in the dining-room, John Schmueser, a customer, sitting at the south lunch counter; Rody Maddox, a wait-

ress, sitting next to Schmueser and engaged in folding napkins, and Valasopoulos, the proprietor, standing behind the lunch counter, almost opposite Schmueser. James Stevens, the chef, and William Garth, the dishwasher, were in the kitchen.

Shortly after 2:15 o'clock a man about five feet four inches in height, wearing a dark gray suit of clothes, white shirt and straw hat, entered the restaurant and approached the cigar case. Valasopoulos walked up the passageway to the front of the room and as he reached the cigar case the stranger drew a revolver from his pocket, pointed it at Valasopoulos, and attempted to rob him. Valasopoulos offered resistance and a struggle followed. Schmueser's attention was attracted by the noise and as he looked, he discovered that Valasopoulos was engaged in a scuffle over the counter with a man who had a revolver in his right hand. Schmueser rushed to Valasopoulos' assistance, caught his assailant by the leg, but failing to hold it, seized his arm to prevent his use of the revolver. The stranger, however, succeeded in shooting Valasopoulos and Schmueser believed that he fired three shots.

Garth, the dishwasher, saw the beginning of the encounter and told Stevens, the chef, that Valasopoulos and a stranger were fighting in the dining-room. Stevens rushed into the room, caught the assailant's arm and attempted to wrest the revolver from him. In the struggle that ensued Stevens lost his hold on the intruder and the latter shot Valasopoulos twice. After the shooting, Schmueser and Stevens went outside the restaurant and called for help.

The assailant escaped from the restaurant, leaving his hat, stopped a passing Dodge sedan automobile driven by Peter Miller, entered it and commanded Miller, at the point of a revolver, to follow a circuitous route for several blocks. When a point some distance northeast of the restaurant was reached, Miller was ejected from the car and it was driven north. Miller was an automobile mechanic employed at the

southwest branch of the Dashiell Motor Company, located near Valasopoulos' restaurant. This company was the agent for the sale of Dodge automobiles and Miller had been directed to drive the car to the company's main salesroom near the center of the city. The car was a new one, dark blue in color and had no registration plates.

About four o'clock the same afternoon a man wearing a light shirt, and without a hat, entered the drug store of George Dembo at 5726 Elston avenue, in the northwestern part of the city approximately eighteen miles from Valasopoulos' restaurant. After ordering a beverage, the man pointed a revolver at Dembo, and emptying the cash register, said that he was "leaving town" and needed money "to get away quickly;" that he had "just shot a man out south" and that he did not want to shoot another. He asked Dembo to take "a good look at him," but commanded him not to move from the place where he stood. The robber drove away in a dark blue Dodge sedan automobile which bore no registration plates. Dembo grabbed his gun, ran out of the store and shot at the departing car.

Immediately after the robbery had been committed, Clarence Falk, a police officer, equipped with a motorcycle, was informed of the fact at a gasoline station in the neighborhood. Looking down the street he observed an automobile being driven in and out of the line of traffic and started in pursuit. Falk overtook the automobile and as he drove alongside of it, pointed his revolver at the driver and ordered him to stop. The driver reduced his speed and said "All right Jack, you got me." Almost instantly, however, he pointed a revolver at the officer and fired twice. The first bullet missed the officer but the second struck him in the back. The occupant of the automobile then drove away at high speed. Falk fired two shots at the fleeing car, but the driver escaped. Later in the afternoon, at about five o'clock, another police officer found a new dark blue Dodge sedan automobile, without registration plates, but with four bullet

holes in the rear of the body, standing in a vacant lot adjoining 4729 Lawrence avenue, a point more than two miles from Dembo's drug store.

Valasopoulos was taken to a hospital immediately after he was shot and died there two days later, on June 22, 1929. The plaintiff in error was identified by Schmueser and Stevens as the person who shot Valasopoulos; by Miller as the man who entered the automobile he was driving and took it from him; by Dembo as the one who robbed his drug store and by officer Falk as the driver of the car he pursued and the man who shot him and escaped. The abandoned Dodge sedan was claimed by and returned to the Dashiell Motor Company and Miller recognized it as the car from which the plaintiff in error ejected him.

The plaintiff in error was arrested at 1:30 o'clock in the morning of August 24, 1929, at 2017 West Monroe street, Chicago, the home of Alva Zaabel. He had lived with her as his wife, although not at that address. At the detective bureau, according to the testimony of police officers, he confessed that he shot a restaurant keeper on Seventy-fourth street in Chicago, some time before and added that after he left a drug store on the north side of the city in the afternoon of the same day, he was shot in the shoulder by a police officer and that he went to Cleveland, Ohio, where a doctor removed the bullet. An examination of his shoulder by local police officers disclosed the presence of a bullet wound.

Proof of an alibi constituted the defense. The plaintiff in error and Alva Zaabel each testified that they had lived at a hotel in Chicago as husband and wife; that they left the hotel at 1:30 o'clock in the morning of June 19, 1929, and drove to Cleveland, Ohio, in an automobile accompanied by a woman named Peggy Longpre and George Forbes, her friend; that they arrived in Cleveland at five o'clock in the afternoon of the same day, and that they went to the home of Mrs. Glovka, the mother of the plaintiff in error,

where they stopped for several days. The plaintiff in error further testified that he returned to Chicago on August 22; that the wounds which the police officers discovered on his body were received in action during the World War and he denied that he ever told police officers that he was shot in Chicago or that he had a bullet extracted from his shoulder in Cleveland.

The plaintiff in error introduced in evidence a bill for repairs to his mother's automobile rendered to him by a garage in Cleveland and purporting to be dated and receipted on June 20, 1929. Testimony was also given by two witnesses,—one the wife of the proprietor of the garage and the other a lodger in Mrs. Glovka's home that the plaintiff in error was in Cleveland on the evening of June 20, 1929. Both witnesses based their testimony upon the time Mrs. Glovka's automobile was repaired and the bill for the work was rendered. On rebuttal, however, both witnesses changed their testimony. The garage proprietor's wife testified that the work was done and the bill was rendered in July instead of June, 1929, and the lodger disclaimed any knowledge of the time when the car was repaired or the charge therefor was made. A third witness employed to do general office work by a company occupying space in the front of the garage, testified that, at the request of the garage proprietor's wife, she wrote the bill in duplicate, dating it June 20, 1929, but that it was actually written on February 21, 1930.

A number of contentions are made by the plaintiff in error for a reversal of the judgment. The first is that the evidence of the robbery of Dembo's drug store, of the shooting of officer Falk, and of the finding of the abandoned automobile in the vacant lot, was inadmissible because it disclosed other crimes not connected with the offense charged in the indictment. In a criminal case the guilt of the person accused cannot be established by showing that he committed offenses separate and distinct from the crime charged, but no principle of law forbids the in-

troduction of relevant evidence tending to prove a fact material to the issue merely because that evidence discloses that the defendant committed other indictable offenses. (1 Wigmore on Evidence,—2d ed.—pp. 460, 461; *People* v. *Cione*, 293 Ill. 321; *People* v. *Horn*, 309 id. 23; *People* v. *Watkins*, 309 id. 318; *People* v. *Swift*, 319 id. 359; *People* v. *Fricker*, 320 id. 495; *People* v. *Durkin*, 330 id. 394; *People* v. *Buskievich*, 330 id. 532). Justice Brewer stated the rule clearly and concisely in *State* v. *Adams*, 20 Kan. 311: "Whatever testimony tends directly to show the defendant guilty of the crime charged is competent, though it also tends to show bim guilty of another and distinct offense. A party cannot by multiplying his crimes diminish the volume of competent testimony against him." The rule which excludes evidence of the defendant's commission of crimes other than that with which he is charged applies only to disconnected offenses; and if the evidence offered has a tendency to identify the accused as the perpetrator of the crime charged, to show his presence at the scene of the crime when an alibi is interposed, to prove design, motive or knowledge where these matters are in issue or relevant, the evidence is admissible although it may also prove the commission of separate and distinct offenses by the person accused. *People* v. *Mandrell*, 306 Ill. 413; *People* v. *Hall*, 308 id. 198; *People* v. *Heffernan*, 312 id. 66; *People* v. *Cummings*, 338 id. 636.

The prosecution was required to establish beyond a reasonable doubt the identity of the person accused with the person who committed the crime charged, and it was competent to make that proof by direct and circumstantial evidence. Schmueser and Stevens saw the plaintiff in error shoot Valasopoulos, and escape from the restaurant without a hat and enter the automobile driven by Miller. Schmueser was acquainted with Miller and described the car driven by the latter as a dark blue Dodge sedan. Miller supplemented Schmueser's description of the car by stating that it was

new and had no registration plates, and he testified that after the intruder ejected him from the car, it was driven north. There was direct evidence, therefore, of the flight in an appropriate means of conveyance and in a certain direction, by the person who committed the crime. After the lapse of the time required to travel the intervening distance, an automobile answering the description of the car in which the flight was begun, appeared in another part of the city and the driver, hatless, entered a drug store and robbed the proprietor. The offender's statement to Dembo, the druggist, that he had shot a man in the direction of Valasopoulos' restaurant and that he needed the money he was taking to effect an immediate escape from the city; his departure from the drug store in a blue Dodge sedan without registration plates; officer Falk's immediate pursuit of the car driven in and out of the line of traffic, and the shooting of the officer by the driver of the car; the firing of shots at the fleeing automobile by Dembo and officer Falk successively; their respective identifications of the plaintiff in error as the robber and the driver of the car; the discovery of the abandoned new Dodge sedan without registration plates, but with bullet holes in the body, and the identification of the car by Miller as the one he was driving when it was taken from him by the plaintiff in error, constitute a chain of facts and circumstances closely connected with, and not distinct from, the crime charged. These facts and circumstances tended to show that the plaintiff in error was not in Cleveland, Ohio, on the afternoon in question as he claimed, but that he was in the course of his flight from the scene of the crime charged against him and that he was the person who had committed that offense. The evidence was therefore admissible.

It is contended that the cross-examination of certain witnesses for the prosecution was unduly restricted by the trial court. Two questions asked John Schmueser concerned the characteristics identifying the plaintiff in error

which remained fixed in the memory of the witness. Although objections to the questions were sustained, they were answered or had been previously answered in substance. Another instance of which complaint is made occurred during the cross-examination of George Dembo, the druggist. He had testified on his direct and early in his cross-examination that the plaintiff in error had robbed his store; that he had seen pictures of one Willie Doody in the newspapers and possibly had told newspaper reporters that Doody had robbed him, but he denied that he had told police officers that Doody was the culprit. He was then asked whether he had seen pictures of Doody prior to the time he was robbed and although an objection to the question was sustained, he answered in the affirmative and the answer was not stricken. Objections were also sustained to the questions whether the witness knew the names of the newspaper reporters to whom he had spoken and whether Doody had round features. It is not pointed out how the answers sought were material, nor how the rulings upon the objections were prejudicial to the plaintiff in error.

The restriction of the cross-examination of officer Falk and of Rody Maddox, the waitress, gives rise to further complaint. Officer Falk was asked on cross-examination whether he had told any newspaper reporters at the hospital, and later whether he had told anybody at any time, that the man who shot him was Willie Doody. Objections to these questions were sustained. Apparently the object of the questions was to lay a foundation for the impeachment of the witness, but they were not sufficiently definite for that purpose. Before a witness can be impeached by showing that he has made oral statements out of court inconsistent with his testimony, he must be asked as to the time, place and person involved in the alleged contradiction in order that he may be afforded an opportunity to explain it. (*Hirsch & Sons Iron Co.* v. *Coleman,* 227 Ill. 149; *Aneals* v. *People,* 134 id. 401; *Northwestern Railroad*

*Co.* v. *Hack,* 66 id. 238; 1 Lewis' Greenleaf on Evidence, sec. 462). Another question asked officer Falk concerned occurrences at the detective bureau and whether Dembo and the witness pointed out the plaintiff in error at the same time. An objection to the question was sustained, but since the question was answered and the answer was not stricken, the court's ruling was not harmful to the plaintiff in error.

On cross-examination Miss Maddox testified that she had gone to the detective bureau and that the plaintiff in error was brought into her presence by police officers. After she had been interrogated with respect to what occurred at the detective bureau, counsel for the plaintiff in error asked, "And when they brought William Lenhardt in the room,—" Before the question was concluded an objection was made and sustained. Thereupon counsel for the plaintiff in error made Miss Maddox his witness and stated that his purpose was to show that the police officers brought his client alone into her presence instead of having her make her identification from a body of men. The witness had stated on direct examination that she could not identify the man who shot Valasopoulos, and it is not apparent how the court's ruling could affect the plaintiff in error adversely.

Objections were sustained to questions asked Edward Farr, a police officer, on cross-examination with respect to the place where Alva Zaabel was detained after the arrest of the plaintiff in error, whether she was informed of the cause of her detention, when the witness left the police station each day and how many prisoners he had conversed with since August, 1929. Similar questions were asked John A. Egan, the acting chief of detectives and William M. Carney, a police officer, and objections to several of the questions were sustained. The relevancy of the answers sought to be elicited by the excluded questions to the issue to be determined in the case does not appear and the contention that the court's rulings were prejudicial to the plaintiff in error is without merit.

It is argued that the court erred in admitting in evidence the revolver found in the possession of the plaintiff in error at the time of his arrest, because, it is said, there was no showing that he used it in committing the crime charged. It is competent to prove that an accused person, when arrested, possessed a weapon suitable for the commission of the crime charged against him, even though no claim is made that he actually used it in committing the particular crime. *People* v. *Powloski,* 311 Ill. 284.

Testimony had been adduced by the defense that the plaintiff in error, Alva Zaabel, Peggy Longpre and George Forbes left Chicago in Forbes' automobile on June 19, 1929. The records of the Paxton Hotel and the work sheets and a ledger sheet of an automobile repair company in Chicago were admitted in evidence on rebuttal. The records of the hotel showed that the plaintiff in error registered at the hotel under his name "and wife"; that he was charged for the room assigned to them to include June 20, 1929, and that the charge included a telephone call from the room on that day. The hotel clerk was asked on cross-examination whether the plaintiff in error could not have left the hotel on June 19 and whether he, the witness, knew of his own knowledge that the plaintiff in error made telephone calls from the room. Objections to these questions were sustained and complaint is made of the court's rulings. The court might properly have permitted these questions to be answered, but since the witness had previously testified that he could not say positively that he had seen the plaintiff in error at the hotel in June; that charges were made to the particular room and that he could not tell who made the telephone call from the room in question on June 20, it is apparent that the exclusion of the answers sought was not harmful to the plaintiff in error.

The automobile repair company's exhibits showed that repairs had been made on George Forbes' automobile and that a credit on account of the charge therefor had been

made on June 21, 1929. A mechanic employed by the company testified that the automobile was delivered late at night on June 20, and that the money paid on account of the charge for the repairs was then placed in the cashier's cage, but that the cashier, owing to her absence, would not receive the money until the next day. The cashier testified that she received the money for the account of George Forbes, 608 York place, Chicago, on or about June 21, 1929. From other testimony it appeared that this was Forbes' address. The contention is made that the testimony of the mechanic and cashier is incompetent and should have been excluded, but no reason to support the contention is given. The testimony was admissible in rebuttal.

It is contended that the court erred in denying the motion of the plaintiff in error to withdraw a juror and to postpone the trial of the case when Katherine Gidroic and John Raplo, witnesses called in his behalf, testified on rebuttal, in answer to questions asked by the prosecution, that they desired to change the testimony they had previously given. Mrs. Gidroic is the wife of the proprietor of the garage in Cleveland who rendered the bill for repairing Mrs. Glovka's automobile and Raplo was the lodger in her home. Both testified falsely when they first appeared on the witness stand and it was not the fault of the prosecution that their offenses were exposed upon the trial. The court properly denied the motion to withdraw a juror.

Complaint is made of certain instructions given to the jury at the request of the prosecution. The fifth instruction read:

"The court instructs the jury, as a matter of law, that the rule which clothes every person accused of crime with the presumption of innocence, and imposes on the State the burden of establishing his guilt beyond a reasonable doubt, is not intended to aid anyone who is in fact guilty of crime to escape, but is a humane provision of the law intended

as far as human agencies can to prevent an innocent person from being convicted."

The jury would not be led by the instruction to disregard the presumption of innocence, as plaintiff in error argues they might, for they were specifically informed by another instruction that the plaintiff in error was presumed to be innocent until he was proved guilty beyond a reasonable doubt. (*People* v. *Witt,* 333 Ill. 258.) The instruction was the same as the third instruction in *People* v. *Scarbak,* 245 Ill. 435, the seventh instruction in *People* v. *Tielke,* 259 id. 88, the third instruction in *People* v. *Rees,* 268 id. 585, and the sixth instruction in *People* v. *Hauke,* 335 id. 217. In those cases the instruction was approved.

The sixth instruction was upon the subject of reasonable doubt and the last sentence of the instruction read: "The reasonable doubt that the jury is permitted to entertain to authorize an acquittal must be as to the guilt of the accused on the whole evidence." It is argued that the use of the word "authorize" placed a barrier in the way of a verdict of not guilty, and that the jury should not be required to look for authority to return such a verdict. This instruction is a common one, and when all the instructions given in the present case are considered together, the jury could not be led to believe that by the use of the word "authorize" a barrier was created to prevent them from rendering any verdict which the evidence justified.

It is also contended that the sentence quoted practically informed the jury that they must have a reasonable doubt on every item of evidence in the case before they would be justified in acquitting the accused, while the law contemplates that a reasonable doubt on any one material element in the case is sufficient to acquit. An instruction which is merely incomplete may be supplemented by other instructions. (*People* v. *Shader,* 326 Ill. 145). Upon the request of the plaintiff in error an instruction, number 19, was given, the concluding part of which read as follows: "If,

upon a consideration of the entire evidence you entertain any reasonable doubt as to any fact or element necessary to constitute the defendant's guilt, it is your duty to give him the benefit of that doubt, and return a verdict of not guilty." This instruction, especially when considered with other instructions upon the subject of reasonable doubt, supplied the omission of which the plaintiff in error complains.

The seventh instruction read as follows:

"The court instructs the jury, that a doubt to justify an acquittal must be reasonable, and it must arise from a candid and impartial investigation of all the evidence in the case, and unless it is such that, were the same kind of a doubt interposed in the graver transactions of life, it would cause a reasonable and prudent man to hesitate and pause, it is insufficient to authorize a verdict of not guilty. If after considering all the evidence you can say you have an abiding conviction of the truth of the charge, you are satisfied beyond a reasonable doubt."

This instruction did not inform the jury that they should be convinced that they had an abiding conviction of the guilt of the accused, as did one in *People* v. *Rischo,* 262 Ill. 596, which was held improper, and to which the plaintiff in error refers. There was no error in giving the seventh instruction. *People* v. *Tielke,* 259 Ill. 88.

The ninth instruction was concerned with the tests or rules to be applied to a defendant's testimony when he becomes a witness in his own behalf. The objection made to the instruction is that it did not apply the same rules to the testimony of the plaintiff in error that it did to the testimony of the other witnesses in the case. The objection is not tenable. The instruction, in part, stated: "You are instructed that when a defendant does testify in his own behalf, then you have no right to disregard his testimony merely because he is accused of crime; that when he does so testify he at once becomes the same as any other wit-

ness, and his credibility is to be tested by and subjected to the same tests as are legally applied to any other witness;" * * * The instruction was substantially the same as instruction 8 in *Siebert* v. *People,* 143 Ill. 571, pp. 592, 593, instruction 4 in *People* v. *Zajicek,* 233 id. 198, and instruction 6 in *People* v. *Maciejewski,* 294 id. 390, which were approved by this court.

Other contentions for a reversal of the judgment are made but all of them are without the semblance of merit and need no detailed discussion.

The judgment of the criminal court of Cook county is affirmed. The clerk of this court is directed to enter an order fixing December 12, 1930, as the time when the original sentence of death entered in the criminal court of Cook county shall be executed. A certified copy of that order will be furnished by the clerk of this court to the sheriff of Cook county.

*Judgment affirmed.*