(No. 22321.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN MIESCHKE, Plaintiff in Error.

*Opinion filed April 21, 1934.*

JOSEPH A. KOLB, (CHARLOTTE SLAVITT, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, J. ALBERT WOLL, HENRY E. SEYFARTH, and AMOS P. SCRUGGS, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Plaintiff in error and Edward Kuberna were jointly indicted in the criminal court of Cook county on a charge of burglary. Kuberna pleaded guilty to larceny, whereupon the court entered an order finding him guilty of larceny and finding the value of the property stolen to be $14. He was sentenced to the house of correction for one year. Plaintiff in error pleaded not guilty. After the court had entered its order finding the value of the property to be $14 it entered an order for a separate trial as to plaintiff in error, which trial was held before the court without a jury. Plaintiff in error was found guilty of larceny and the value of the property was found to be $100. Having been sentenced to the penitentiary he prosecutes this writ of error.

Michael Proudian testified that on the afternoon of August 13, 1933, he returned to his room and found it in disorder, and that there were six suits of clothes, other articles of wearing apparel, two suit-cases and some pic-

tures missing. Some of these articles he said belonged to a friend of his. He testified to what he had paid some years before for some of the clothing but did not give any evidence as to the value of any article at the time it was stolen, neither did he tell which articles belonged to himself and which belonged to his unnamed friend. Two suits of clothing belonging to the complaining witness were recovered on the same afternoon from the store of John Marshall, who also testified for the People. Marshall appears from the record to have been running a small retail store somewhere in the neighborhood of the scene of the daylight burglary. He testified that on the afternoon of August 13 he loaned Kuberna four dollars on two suits of clothing, three and a half dollars of it being in cash and fifty cents in merchandise. He further testified that he made the loan to Kuberna, but that plaintiff in error was not a party to that transaction nor in the store when the loan was made, having been out in front of the store talking to some men who were sitting around there.

Police officer Paul E. Mielke testified that he was one of those who investigated the burglary but that he did not recover any clothing from anyone; that he talked to plaintiff in error, who stated to him that he had walked over with Kuberna to the neighborhood of Proudian's room, and that he waited outside for Kuberna and helped him carry away a couple of suit-cases.

Kuberna, after pleading guilty, testified for the People but gave a confused and altogether unsatisfactory account of the happenings of the day in question. He testified that he did not remember whether or not he went to the room of Proudian and took the clothes in question, and gave in great detail a story of excessive drinking and drunkenness, which he claimed made it impossible for him to remember what had happened. The presiding judge reminded him that he had pleaded guilty to the offense, and his testimony thereafter became a little more certain although still of little

value. He testified that plaintiff in error was with him for a while on the afternoon in question and that during that time they walked toward the room of the complaining witness. He further testified that he went through a window into a room but did not remember what he did in there because of being so drunk. After some leading questions he admitted that he did remember taking a suit-case containing clothes; that "we" walked down the alley and drank another half-pint, after which he "went out like a light" and did not remember anything further until waking up later in the alley. When asked by the court whom he meant by "we," he replied, "Me and Mieschke." He then testified that he got into the room through a screen, but he did not think Mieschke was in. The State's attorney thereupon asked the witness if he recalled talking to him just before the noon recess, to which he answered in the affirmative. He was then asked if he had not told the State's attorney at that time that Mieschke and himself broke into the room, to which he replied, "Yes, sir." On cross-examination his testimony was even more confused and unsatisfactory. He stated positively, however, that he did not remember Mieschke being in Proudian's flat with him.

Plaintiff in error testified denying his guilt. He admitted that he went with Kuberna at Kuberna's request on the representation that he was going to see a friend of his. He said he waited at a street corner for about twenty minutes and then went home; that Kuberna thereafter came to his home with two suit-cases and asked permission to leave them there; that being suspicious he told Kuberna he did not want anything to do with them, and Kuberna assured him that they were not stolen and that everything was all right. His testimony was nearly as unsatisfactory as Kuberna's, and for the same alleged reason that they had both been excessively drunk on the afternoon in question.

The evidence in the case is not sufficient to find the defendant guilty beyond a reasonable doubt. There is no

proof of the value of the goods but only some vague evidence as to what a part of them cost at an indefinite previous time. The value of the property stolen is an essential element of larceny. (*People* v. *Jackson,* 312 Ill. 611.) Neither is there any evidence sufficient to prove, beyond a reasonable doubt, that plaintiff in error was a party to the daylight robbery or that he had any guilty knowledge that the goods were stolen. He did not take any part in their pawning and did not receive any portion of the proceeds. The only evidence that he was even in the apartment is the admission of Kuberna that he had told the State's attorney that such was a fact, which statement was made during a recess, out of court and not under oath. His statement under oath was that he did not think Mieschke was with him in the room in question. The most that can be said of this evidence is that the State's attorney had succeeded in partially impeaching his own witness, but it cannot be said that the unsworn statement out of court is of as great weight as the sworn statement in court. (*People* v. *Dascola,* 322 Ill. 473.) Under the *falsus in uno* doctrine the entire testimony of this witness pertaining to the gist of the transaction might have been rejected because entirely uncorroborated. *People* v. *Tielke,* 259 Ill. 88; *People* v. *Jones,* 312 id. 190.

We have examined the whole record with care and fail to find in it sufficient proof to establish the guilt of the plaintiff in error beyond a reasonable doubt. Under such circumstances we will not hesitate to reverse the judgment. *People* v. *Nemes,* 347 Ill. 268, and cases there cited.

The judgment of the criminal court of Cook county is reversed and the cause is remanded.

*Reversed and remanded.*